514 A.2d 189

COMMONWEALTH of Pennsylvania, Appellant,

v.

Jon Otis VANDER WEELE.

Superior Court of Pennsylvania.

Argued April 30, 1986.

Filed Aug. 12, 1986.

Thomas P. Agresti, Assistant District Attorney, Erie, for appellant Com.

Raymond Pagliari, Erie, for appellee.

Before DEL SOLE, MONTEMURO and POPOVICH, JJ.

DEL SOLE, Judge:

Jon Otis Vander Weele was found guilty after a jury trial of Corruption of Minors [1] and Indecent Assault [2] with re-

---

1. 18 Pa.C.S.A. § 6301

   (a) Offense defined.—Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, is guilty of a misdemeanor of the first degree.

   (b) Adjudication of delinquincy unnecessary.—A conviction under the provisions of this section may be had whether or not the jurisdiction of any juvenile court has attached or shall thereafter attach to such minor or whether or not such minor has been adjudicated a delinquent.

   (c) Presumptions.—In trials and hearings upon charges of violating the provisions of this section, knowledge of the minor's age and of the court's orders and decrees concerning such minor shall be presumed in the absence of proof to the contrary.

   (d) Mistake as to age.—

   (1) Whenever in this section the criminality of conduct depends upon the corruption of a minor whose actual age is under 16 years, it is no defense that the actor did not know the age of the minor or reasonably believed the minor to be older than 18 years.

   (2) Whenever in this section the criminality of conduct depends upon the corruption of a minor whose actual age is 16 years or more but less than 18 years, it is a defense for the actor to prove by a preponderance of the evidence that he reasonably believed the minor to be 18 years or older.

   1978, July 1, P.L. 573, No. 104, § 1, effective in 60 days.

2. 18 Pa.C.S.A. § 3126

spect to his conduct toward his minor step-daughter during the period of December 2, 1983 through February 14, 1984.

Following the filing of post-trial motions, the court en banc entered an Order granting Appellee's Motion for New Trial. The Court determined the trial court erred, 1) in permitting the Commonwealth to cross-examine character witnesses with regard to guilty pleas entered by Appellee to prior charges of Disorderly Conduct and Criminal Mischief; 2) in its instruction to the jury relating to character evidence; and 3) in determining that records of Children's Services of Erie County and the Family Crisis Organization enjoy an absolute privilege under 42 Pa.C.S.A. § 5944.

This is an appeal by the Commonwealth pursuant to Pa.R.App.P. 311(a)(5) from the Order granting Appellee's Motion for New Trial. In support of its' position, the Commonwealth argues, 1) cross-examination as to witnesses knowledge of Appellee's prior convictions was proper in light of the specific character trait in issue, that being "moral character" or "moral uprightness"; 2) the trial court properly instructed the jury as to the effect and weight it was to give certain character testimony; and 3) Appellee is not entitled to the results of an *in camera* inspection by the trial court of certain alleged statements made by the victim to either Children's Services or the Family Crisis Organiza-

A person who has indecent contact with another not his spouse, or causes such other to have indecent contact with him is guilty of indecent assault, a misdemeanor of the second degree, if:

(1) He does so without the consent of the other person;

(2) He knows that the other person suffers from a mental disease or defect which renders him or her incapable of appraising the nature of his or her conduct;

(3) He knows that the other person is unaware that an indecent contact is being committed;

(4) He has substantially impaired the other person's power to appraise or control his or her conduct, by administering or employing without the knowledge of the other drugs, intoxicants or other means for the purpose of preventing resistance; or

(5) The other person is in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over him.

1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973. As amended 1976, May 18, P.L. 120, No. 53 § 1, effective in 30 days.

tion, especially since Appellee never requested such an inspection.

Initially we observe that:

[o]ur standard of review in this case is defined by the Supreme Court's holding in *Commonwealth v. White*, 482 Pa. 197, 199, 393 A.2d 447, 449 (1978): 'As with a denial of a motion for new trial, so with the grant of such a motion, our review is limited to ascertaining whether the lower court abused its discretion or committed an error law.'

*Commonwealth v. Frazier*, 331 Pa.Super. 128, 132–133, 480 A.2d 276, 279 (1984).

"It has long been the law in Pennsylvania that an individual on trial for an offense against the criminal law is permitted to introduce evidence of his good reputation in any respect which has 'proper relation to the subject matter' of the charge in issue." *Commonwealth v. Luther*, 317 Pa.Super. 41, 49, 463 A.2d 1073, 1077 (1983). The charges in issue, as previously stated, are Corruption of Minors and Indecent Assault. In an effort to introduce evidence of his good reputation, Appellee called three character witnesses and asked that based upon their familiarity with others who know Appellee in the community, "does he have a reputation for moral character or moral uprightness?" to which each essentially responded that Appellee's reputation for this trait is good. (Trial Transcript at 110, 118, 122–123).

The utilization of character witnesses is not however without attendant risk. "Character witnesses, like any other witnesses, can be subjected to cross-examination and it is the scope of the cross-examination that has been a troublesome area for the courts, commentators and the profession." *Commonwealth v. Scott*, 496 Pa. 188, 193, 436 A.2d 607, 610 (1981). Furthermore, "[t]he extent of the cross-examination is within the discretion of the trial judge, who will not be reversed except for a clear abuse of discretion or an error law." *Commonwealth v. Hammond*, 308 Pa.Super. 139, 147, 454 A.2d 60, 64 (1982).

It is the scope of cross-examination which forms the basis of the Commonwealth's first assignment of error. At a sidebar conference, the Commonwealth indicated to the court that Appellee had pled guilty to disorderly conduct and criminal mischief arising out of an incident in which Appellee fired a rifle in the back yard of his home. The Commonwealth further noted that it intended to question character witnesses concerning the convictions. Counsel for Appellee objected on the basis that neither of the convictions go to the character trait involved on direct examination as nothing was asked about nonviolence or law-abiding character. The trial court disagreed and permitted this line of cross-examination.[3]

**3.** The specific testimony at issue is as follows:

Q. I'm going to ask you a couple of questions. First of all, your husband is Frank Abate, the District Justice; is that correct?
A. Yes, he is.
Q. Okay. And he has been privy to these conversations regarding the morality or uprightness of this individual?
A. Okay.
Q. Has Frank Abate been involved in any of the discussions over this period of time as to the morality and uprightness of this individual?
A. We have known Jon.
Q. My question is yes or no, has he been involved in conversations about his morality and uprightness?
A. Yes.
Q. Okay. Thank you. Now, under what circumstances would the topic turn to the morality and uprightness of Jon Vander Weele? What would cause a group of people in the community to talk about that?
A. Well, different things have come up. I take calls for my husband, being he is a district justice, he receives many calls at home. When he's not there, I take the calls. So I have come into contact with the police; calling for different things they talk to me.
Q. Okay.
A. And will ask me, you know, where he is, can they have this or that.
Q. On Mr. Vander Weele?
A. Yes.
Q. Would one of those times be when Mr. Vander Weele pled guilty to two counts of disorderly conduct and criminal mischief arising out of a firing of a weapon in his back yard, a rifle?
A. Yes.

(Trial Transcript at 119–120).

The following cross-examination of another character witness occurred:

As a general statement, "[t]he cross-examination of a character witness for the defense regarding the defendant's prior criminal record is not an abuse or [sic] discretion as the defense opens the door to such an inquiry by placing his reputation at issue in calling such witnesses." *Commonwealth v. Hammond,* 308 Pa.Super. at 149, 454 A.2d at 65. There are however limits. For example, until our Supreme Courts decision in *Scott,* when a defendant:

> introduced evidence of his own good character, the Commonwealth could then cross-examine the character witness as to whether or not he or she had ever heard persons in the neighborhood attribute particular offenses to the defendant.... The cross-examination, however, was required to pertain to offenses which related to the character trait vouched for on direct examination....

*Commonwealth v. Fawcett,* 297 Pa.Super. 379, 385, 443 A.2d 1172, 1175 (1982) (citations omitted).

In *Scott* however:

> the Supreme Court abrogated the rule which permitted character witnesses to be cross-examined regarding arrests even when they pertained to the character trait vouched for on direct examination. By so doing, the court has cast a cloud of doubt on the right to cross-examine a character witness concerning any and all prior, relevant offenses absent a conviction therefor.

> Q. Mr. Fish, I don't need to introduce myself to you. We've known each other for a while. You represented Mr. Vander Weele on those charges before District Justice Abate regarding—resulting in a plea of disorderly—two disorderly conducts and—
> A. Yes, I did.

> Q. So, sir, you did represent Mr. Vander Weele at the time he pled guilty to those charges; is that correct?
> A. Yes, I did.
> Q. Would that fact had these people that you have discussed the moral uprightness and moral character of this particular individual, would that fact have changed their opinions at all with respect to their conclusions as to his morality, moral character and morality for uprightness?
> A. No.

(Trial Transcript at 123–124).

*Commonwealth v. Fawcett,* 297 Pa.Super. at 386, 443 A.2d at 1175.

▪ What has not changed, and is of importance to our resolution of this claim is that, "[e]vidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged.... The cross-examination of such witnesses by the Commonwealth must be limited to the same traits." *Commonwealth v. Luther,* 317 Pa.Super. at 49–50, 463 A.2d at 1077. For instance, when a character witness testifies to being familiar with a defendant's reputation for truthfulness, cross-examination pertaining to a crime of assault is improper. *Commonwealth v. Fawcett,* 297 Pa. Super. at 384–85, 443 A.2d at 1175. Similarly, there is no relationship between the crimes of Disorderly Conduct and Criminal Mischief and the character trait to which the witnesses testified, that being "moral character" or "moral uprightness".[4]

The Commonwealth next contends that the trial court properly instructed the jury concerning the effect and weight to be given character evidence. "We begin our analysis by noting that a defendant who produces character testimony of a good reputation in the community is entitled to a jury instruction that character evidence alone may be sufficient to raise reasonable doubt and, thus, justify acquittal of the charges." *Commonwealth v. Belmonte,* 349 Pa.Super. 1, 20, 502 A.2d 1241, 1251 (1985). "This court has made clear that '[i]n a case ... where intent and credibility are decisive factors leading to either acquital or conviction, the accused's reputation is of paramount importance. Indeed, evidence of good character may, in spite of all evi-

4. In 2 Wharton's Criminal Evidence § 426 (2d ed. 1972) the author provides by way of illustration that a character witness may be asked on cross-examination in a prosecution for rape or some other sex crime, about crimes in which the defendant had assaulted or ravished several women, exposed himself to females, been convicted of bastardy, and taken liberties with the prosecutrix's sister, or molested other females.

dence to the contrary, raise a reasonable doubt in the minds of the jury." *Commonwealth v. Luther,* 317 Pa.Super. at 50, 463 A.2d at 1078. However, "[a] court may use its own language in charging the jury rather than that proposed by counsel if the issue is adequately, accurately and clearly presented." *Commonwealth v. Sisco,* 484 Pa. 85, 89, 398 A.2d 955, 957 (1979).

In the case *sub judice,* the court instructed the jury in the following manner with regard to character evidence:

> Now, reputation evidence is substantive evidence and it's important that you should consider it as such. If you believe the testimony that he does have a good reputation for these elements, it's possible that that could create a reasonable doubt in your mind as to his guilt. On the other hand, if you determine that the defendant actually did commit these crimes even though he has a good reputation, you can't say he's not guilty if you find that he did it, you don't let him go just because he does have a good reputation.

(Trial Transcript at 165).

█ As the court en banc found, absent from the above instruction is the requested and necessary charge that character evidence alone may be sufficient to raise a reasonable doubt and thus justify an acquittal.

█ The Commonwealth's final claim is not totally without merit. Appellee filed pre-trial motions seeking among other things, permission to inspect records of Children's Services of Erie County and the Family Crisis Organization. The Commonwealth answered that the requested records are confidential and not discoverable, citing 42 Pa.C.S.A. § 5945.1 as authority. The trial court denied Appellees motion and the court en banc found this to be error. We agree. Our Supreme Court in *Commonwealth v. Ritchie,* 509 Pa. 357, 363, 502 A.2d 148, 151 (1985), has indicated that the confidentiality provision of the Child Protective Services Law, 11 P.S. § 2215(a) differ from the confidentiality and privilege provision of 42 Pa.C.S. § 5945.1 relating to sexual

assault counsellors. The trial court therefore erred in its determination that 42 Pa.C.S. § 5945.1 is dispositive of Appellee's request for inspection of records. However, we agree with the Commonwealth that in the event of a retrial, it will be for the trial court to determine whether or not Appellee would be entitled to the records in question under 11 P.S. 2215(a) and the *in camera* inspection requirement set forth in *Ritchie,* in the event Appellee makes such a request.

Therefore, we affirm the order of the trial court granting Appellee's Motion for new trial as the trial court has neither abused its discretion nor committed an error of law.

POPOVICH, J. concurs in the result.