598 A.2d 553

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Iran TIPPENS, Appellant.**

Superior Court of Pennsylvania.

Argued April 9, 1991.

Filed Oct. 23, 1991.

538

Christine M. Adair, Philadelphia, for appellant.

Alan Sacks, Asst. Dist. Atty., Philadelphia, for Com.

Before ROWLEY, President Judge, and CAVANAUGH, CIRILLO, OLSZEWSKI, MONTEMURO, BECK, TAMILIA, POPOVICH and HUDOCK, JJ.

CAVANAUGH, Judge:

This is an appeal from judgment of sentence entered in the Court of Common Pleas of Philadelphia County on December 7, 1989, following appellant's convictions for aggravated assault and possession of an instrument of crime. Appellant was sentenced to five to ten years imprisonment.

In this direct appeal, appellant first alleges trial counsel was ineffective because he was unprepared and made numerous trial strategy decisions which were unreasonable. Second, appellant contends trial counsel and post-verdict motions counsel were ineffective for failing to insure that appellant received the benefit of a jury instruction on character evidence in accordance with *Commonwealth v. Neely*, 522 Pa. 236, 561 A.2d 1 (1989). Third, appellant asserts that trial counsel and post-verdict motions counsel were ineffective in failing to object to the prosecutor's statement that the complaining witness/victim "came [into court] and told [the jury] the truth." Having found merit in the first of appellant's arguments, we vacate and remand for a new trial.

The record reveals the following facts. On December 13, 1987, a man entered a neighborhood grocery store owned by the victim, Jessie Batton, Jr., and purchased some milk. The man then departed but returned shortly thereafter to complain the the milk was sour. Batton credited the man for the returned milk and resumed cleaning out the ice cream freezer in the rear of the store. The man then approached Batton from behind, aimed a pistol at Batton's head and stated, "Don't make me blow you away." Batton grabbed the gun, a struggle ensued, and the gun fired as the men tussled on the floor. One of Batton's fingers was struck by the discharged bullet. Thereafter, Batton seized the gun, and the man fled. The police arrived shortly thereafter to investigate.

Approximately one month later, on January 17, 1988, Batton was working at another convenience store owned by his family, when the alleged perpetrator entered the store. Batton followed the man to his destination and telephoned the police. After the police arrived, Batton pointed out the man to the authorities, who arrested appellant and charged him with attempted robbery, aggravated assault and possession of an instrument of crime. Subsequently, the attempted robbery charge was dropped.

At trial, appellant proffered the defenses of misidentification and alibi. Evidence was presented that appellant possessed an abnormally large forehead as well as facial hair on the day of the crime. However, neither of these characteristics was mentioned in Batton's description of the perpetrator to the police. Appellant also presented evidence that at the time of the crime, he was playing pinochle with some friends.[1] Additionally, appellant called witnesses who testified concerning his good reputation in the community. Appellant's defenses failed, and the jury convicted him of aggravated assault and possession of an instrument of crime.

Subsequently, appellant's trial counsel filed post-verdict motions. Before the court addressed these motions, appellant retained new counsel and filed post-trial motions *nunc pro tunc*, alleging numerous instances of trial counsel's ineffectiveness. A hearing was held as to the ineffectiveness claims on March 20, 1989. Finding counsel was not ineffective and that appellant's post-verdict motions were lacking in merit, the lower court denied the motions on December 7, 1989 and reimposed sentence. This appeal followed and is pursued by new counsel, appellant's fourth attorney.

In alleging his trial counsel's ineffective stewardship, appellant asserts, *inter alia*, that counsel was unprepared for trial and that counsel erred in calling eye-witness Barry Wright as a defense witness. These two inter-related allegations of ineffectiveness are meritorious, and it is clear from the record that counsel's work was woefully lacking.

Barry Wright was working for the victim as a store clerk at the time of the shooting. Wright was described by the investigating police officer as "slow," and the officer indicated he had a difficult time getting a coherent statement from Wright. At trial, the Commonwealth chose not to call Wright, even though he was an eye-witness. For reasons that trial counsel later could not remember, he chose to call

1. Appellant contended that he and several friends regularly played pinochle every Wednesday and occasionally Sunday.

Wright as a defense witness. (N.T., 3/29/89, pp. 32–33). Counsel called Wright in spite of the fact that he had neither reviewed any prior statements of Wright nor had he interviewed Wright. The trial court questioned counsel's basis for calling Wright during the side-bar exchanges which occurred after Wright's examination by defense counsel and before cross-examination by the Commonwealth:

The Court: What is this witness to testify to that you understand? I don't want this guy down on cross-examination to prejudice your case in any way. What has he brought to the attention of the court that is important?

Defense Counsel: Well, the Commonwealth had indicated to the, through the witness that this gentleman was a little, I won't say retarded or otherwise excitable.

The Court: Don't say—

Defense Counsel: Well, that's one thing.

The Court: What other?

Defense Counsel: He was [not] a Commonwealth witness for that reason. Also with regard to the weapon itself, what I was able to elicit, something is totally different as to where the weapons were and the bullets, that's all I wanted, that's all.

The Court: Does that help your case any?

Defense Counsel: Yes, I think?

The Court: The guy got shot, it was a—

Defense Counsel: I don't know whether he shot himself or not, something is goofy about this whole thing, that's my position.

The Court: This guy provided no evidence except this guy is going to be cross-examined, and he's going to provide evidence that he may be prejudice and critical to you, may hurt you.

Defense Counsel: That's all I wanted.

The Court: You wanted to contradict somebody?

Defense Counsel: I have contradicted the complainant.

542

The Court: Okay, it's for the purpose, contradiction. At one time the gun was on the bench. When he saw it, it was on the bench, is that a contradiction? Okay.

The Court: I'm just concerned [defense counsel] was not permitted to cross-examine and ask leading questions. I know because he can't do it but you can, you see, and you can lead him almost anywhere you want. I gather from this witness—I don't know why [defense counsel] put him on the witness stand. I don't want it later to be said that he made a boo boo here that inures to his client's detriment, prejudice, ineffectiveness of counsel, you know.... [The prosecution] is going to now cross-examine and lead him to what [it] want[s] him to do, and he's so slow mentally that he's going to be led into almost anything.

(N.T., 7–18–88, pp. 74–77).

On cross-examination, Wright identified appellant as Mr. Batton's assailant.

 Counsel is ineffective when there is merit to the underlying claim, the course chosen by counsel does not have a reasonable basis, and the defendant shows prejudice. *Commonwealth v. Graham*, 522 Pa. 115, 118, 560 A.2d.129, 130 (1989). We recognize that generally trial strategy is a matter best left to counsel and that a defendant is not entitled to relief simply because the strategy is unsuccessful. *Commonwealth v. Davis*, 381 Pa.Super. 483, 496, 554 A.2d 104, 111–112 (1989). However, instantly, trial counsel's strategy was based upon nothing more than a "hunch" that Wright's testimony would be unfavorable to the Commonwealth. Counsel had no reasonable basis to assume his testimony would be unfavorable. He had neither reviewed Wright's pre-trial statements nor interviewed him personally. By calling Wright to the witness stand, trial counsel did get the minimal benefit of contradicting the complainant concerning where the gun and bullets were located when the police arrived. However, this issue was at best insignificant, especially in light of the fact that a Commonwealth

witness had already contradicted the complainant as to the location of the gun.

Further, it was obvious that the Commonwealth chose not to call Wright due to his mental disabilities upon which a Commonwealth witness had already commented. By calling Wright, counsel placed another eyewitness on the stand who could, and did, identify appellant and corroborate the complainant's identification. Considering Wright's apparent mental disability, defense counsel's decision to call him was obviously without justification since, by so doing, counsel gave the Commonwealth the significant advantage of cross-examination, thus, permitting the Commonwealth to lead Wright through his identification testimony.

The prejudice to appellant is also obvious. Appellant's defenses were misidentification and alibi. Defense counsel's decision to call a second eyewitness to the stand who could potentially corroborate the complainant's identification cannot be considered reasonable, especially in light of the facts that: 1) counsel had no articulable reason to believe Wright's testimony would be unfavorable to the Commonwealth; 2) Wright was "slow" and "disorganized"; and 3) the Commonwealth would be permitted to lead Wright through his identification testimony. On the basis of the identification testimony of the victim, the Commonwealth may or may not have been able to pursuade the jury of appellant's guilt. However, because of the ineffective performance by defense counsel, the guilty verdict rendered by the jury is constitutionally suspect and we are obliged to award a new trial.

We treat the second and third issues in light of our status as an intermediate appellate court. Because we are unable to predict the future course of this litigation, which may include supreme court review, we will consider the remaining two issues raised on reargument.

Appellant contends trial counsel and post-verdict motions counsel were ineffective for failing to insure that appellant received the benefit of a jury instruction on character

evidence in accordance with *Commonwealth v. Neely,* 522 Pa. 236, 561 A.2d 1 (1989).

Appellant presented several witnesses who attested to appellant's good reputation in the community. Trial counsel requested the lower court to instruct the jury that evidence of good character may, in and of itself, create a reasonable doubt. The trial court, relying upon this Court's decision in *Commonwealth v. Neely,* 372 Pa.Super. 519, 539 A.2d 1317 (1988), reversed 522 Pa. 236, 561 A.2d 1 (1989), stated that the law on character evidence had been changed and refused the instruction. Trial counsel raised this issue in his post-verdict motions. However, appellant's new counsel who filed post-verdict motions *nunc pro tunc* failed to raise the issue either directly or via an allegation of ineffectiveness.

At the time the charge was given this court's decision represented the law of the Commonwealth which provided that evidence of good reputation should be considered as all other evidence and as on a par with other evidence.

Subsequent to the jury instruction, the Supreme Court reversed this court's decision in *Commonwealth v. Neely,* 522 Pa. 236, 561 A.2d 1 (1989) and held that evidence of good character or reputation may in and of itself create a reasonable doubt of guilt and require a verdict of not guilty.

 That the court below did not give the requested charge that evidence of good reputation in and of itself could be sufficient to require an acquittal and that this issue was not preserved for review, did not render counsel ineffective. Counsel is not ineffective for following the law in existence at the time in question or for failing to predict changes in the law. *Commonwealth v. Mitchell,* 391 Pa.Super. 100, 570 A.2d 532 (1990); *Commonwealth v. Jones,* 389 Pa.Super. 159, 566 A.2d 893 (1989).

 The charge when given was a correct statement of the law. Counsel had no way of knowing that our decision in *Commonwealth v. Neely* would be overruled by the Supreme Court.

The lower court relying upon our *Neely* decision, instructed the jury:

By further defense, the defendant also asked you to consider his character. He presented witnesses to attest to his good character, he being a decent, law-abiding citizen. How do you deal with that evidence? It is important that you understand that evidence. From time immemorial, historically, a good reputation has been regarded as one of the principle assets of a person. If a person has lived awhile, earned a good reputation in the community amongst people who know him best, the law permits him to avail himself of that reputation in evidence in support of his innocence when he's accused of a crime. *Evidence of an accused[s] good reputation then is to be considered by you along with other evidence in the case. It may, in combination with other evidence create that reasonable doubt, and if you find that, the defendant is to be acquitted.* But reputation evidence, like all other evidence must be assessed by you and evaluated by you. Reputation evidence then is substantive evidence which like any other testimony must be weighed and tested and considered by you with all of the other evidence in the case. You must decide for yourselves whether to accept that testimony, what weight to give to it, and whether it raises a reasonable doubt in your mind that a man enjoying that reputation would commit such a crime.

However, Ladies and gentlemen, if the Commonwealth has shown to you beyond a reasonable doubt that the defendant is guilty of these crimes, even though he has a good reputation, he is not go to free simply because of it. So the focus here is whether or not the Commonwealth has proven its case to you beyond a reasonable doubt.

This instruction conveyed the holding of this court in *Neely*. This Court's unanimous *en banc* opinion in *Neely* did not intend to overrule the law in Pennsylvania concerning character evidence that had remained unchanged in Pennsylvania jurisprudence for almost one hundred years

before our decision in *Neely*. We may not fault counsel for not discerning that we changed a one hundred year-old rule, when we ourselves stated in *Neely*, 372 Pa.Super. at 529, 539 A.2d at 1322 referring to the use of character evidence:

In doing this we do not change the law in Pennsylvania, but rather we reaffirm the law as set forth by our Supreme Court.

Since the instruction as given was in compliance with this court's *en banc* holding in *Neely*, we find no ineffectiveness on counsel's part in failing to seek to have the jury instructed otherwise.

 Finally, we address appellant's assertion that trial counsel and post-verdict motions counsel were ineffective in failing to preserve the issue of whether the prosecutor's statement that the complaining witness "came [into court] and told [the jury] the truth" was reversible error. Here, we find appellant's underlying issue to be without merit. We agree with appellant that "it is improper for a prosecutor to express a personal belief or opinion as to the truth or falsity of evidence of defendant's guilt, including the credibility of a witness." *Commonwealth v. Young*, 524 Pa. 373, 394, 572 A.2d 1217, 1227 (1989); *Commonwealth v. Johnson*, 516 Pa. 527, 533 A.2d 994 (1987); *Commonwealth v. Anderson*, 501 Pa. 275, 282, 461 A.2d 208, 211 (1983); *but see Graham, supra* (it is not reversible error for the prosecutor to comment that defendant lied in cases where the comment was a fair inference from the evidence, rather than a broad characterization). However, it is also true that reversible error occurs only when the unavoidable effect of the prosecutor's comments is to prejudice the jury, forming in their minds a fixed bias so onerous that they could not weigh the evidence objectively and render a true verdict. *Young*, 572 A.2d at 1217; *Johnson*, 533 A.2d at 997; *Anderson*, 461 A.2d at 211. We must remember that "not every intemperate or improper remark by the prosecutor requires a new trial." *Johnson*, 533 A.2d at 996.

Instantly, the prosecutor, ending his closing argument, stated: "I submit to you [Batton] is courageous, yes, lucky

but very courageous businessman, and I believe he came in here and told you the truth." (N.T., 7/18/88, p. 179). Although it is improper for a prosecutor to comment on the veracity of his own witness, we do not believe instantly, that the prosecutor's comment so prejudiced the jurors that they were unable to render a true verdict.

■ The statement in question was a brief, isolated excerpt from the prosecutor's summation which was not likely to draw undue attention. *Cf., Commonwealth v. Davis,* 363 Pa.Super. 562, 583, 526 A.2d 1205, 1216 (1987); *Commonwealth v. Lacy,* 324 Pa.Super. 379, 383, 471 A.2d 888, 891 (1984); *compare, Commonwealth v. Collins,* 462 Pa. 495, 499, 341 A.2d 492, 493 (1975) ("The record is replete with instances of prosecutorial misconduct ...") Also, adequate jury instructions to correct the problem in question, including instructions on assessing credibility and the jury's function as the ultimate finder of fact, immediately followed the prosecutor's closing remarks albeit no specific cautionary instruction was given. *Cf., Lacy,* 471 A.2d at 891. And fourth, this was not a case where the prosecutor's comment was aimed at inflaming the passions of the jury. Compare, *Anderson, supra* (defendant characterized as an "executioner" carrying out an "assassination"); *Commonwealth v. Gilman,* 470 Pa. 179, 368 A.2d 253 (1977) (defendant referred to as "judge, jury and ultimately executioner"). In sum, this is simply a case where the prosecutor explicitly told the jury that which the jury already knew, that the prosecution believed its witness. Thus, appellant was not prejudiced by the comment and counsel cannot be held ineffective for failing to preserve a meritless claim. *Graham, supra.*

Having found trial counsel was ineffective in the presentation of the witness Barry White, we regretfully vacate the judgment of sentence and remand for a new trial.

Judgment of sentence vacated; case remanded for a new trial. Jurisdiction relinquished.

POPOVICH, J., filed a concurring and dissenting opinion in which ROWLEY, President Judge, joined.

POPOVICH, Judge, concurring and dissenting:

While I join in the majority's resolution of appellant's first and third issues, I disagree with the majority's determination that post-verdict motion counsel was not ineffective for failing to insure that appellant received the benefit of a jury instruction on character evidence in accordance with *Commonwealth v. Neely*, 522 Pa. 236, 561 A.2d 1 (1989). Rather, I would find that post-verdict motion counsel was ineffective in failing to preserve that issue for review.

Counsel is ineffective when there is merit to the underlying claim, the course chosen by counsel does not have a reasonable basis and the defendant shows prejudice. *Commonwealth v. Graham*, 522 Pa. 115, 117, 560 A.2d 129, 130 (1989). At trial, appellant presented several witnesses who attested to appellant's good reputation in the community. Trial counsel requested the lower court to instruct the jury that evidence of good character may, in and of itself, create a reasonable doubt. However, the trial court, relying upon this Court's decision in *Commonwealth v. Neely*, 372 Pa.Super. 519, 539 A.2d 1317 (1988), reversed 522 Pa. 236, 561 A.2d 1 (1989), stated that the law on character evidence had been changed and refused the instruction.

Trial counsel raised the issue of whether the court properly instructed the jury on character evidence in his post-verdict motions. However, appellant retained new counsel who filed post-verdict motions *nunc pro tunc* on December 9, 1988. Therein, counsel failed to raise the jury instruction issue. It is significant to note that our Supreme Court granted *allocatur* for *Neely, supra*, on August 23, 1988, over three months prior to the filing of the post-verdict motions *nunc pro tunc*. *Allocatur* granted in *Commonwealth v. Neely*, 519 Pa. 664, 548 A.2d 254 (Table, 1988). Further, our Supreme Court handed down its decision in *Neely, supra*, on June 28, 1989, *over five months prior to the lower court's final adjudication of appellant's post-verdict motions on December 7, 1989.*

In *Neely, supra,* our Supreme Court stated unequivocally that "[a] criminal defendant must receive a jury charge that evidence of good character (reputation) may, in and of itself, (by itself or alone) create a reasonable doubt of guilt and, thus, require a verdict of not guilty." *See also Commonwealth v. Scott,* 496 Pa. 188, 195, 436 A.2d 607, 611 n. 1 (1981); *Commonwealth v. Cleary,* 135 Pa. 64, 80, 19 A. 1017, 1018 (1890). Instantly, the lower court, relying upon our *Neely* decision, instructed the jury:

By further defense, the defendant also asked you to consider his character. He presented witnesses to attest to his good character, he being a decent, law-abiding citizen. How do you deal with that evidence? It is important that you understand that evidence. From time immemorial, historically, a good reputation has been regarded as one of the principle assets of a person. If a person has lived awhile, earned a good reputation in the community amongst people who know him best, the law permits him to avail himself of that reputation in evidence in support of his innocence when he's accused of a crime. *Evidence of an accused['s] good reputation then is to be considered by you along with other evidence in the case. It may, in combination with other evidence create that reasonable doubt, and if you find that, the defendant is to be acquitted.* But reputation evidence, like all other evidence must be assessed by you and evaluated by you. Reputation evidence then is substantive evidence which like any other testimony must be weighed and tested and considered by you with all of the other evidence in the case. You must decide for yourselves whether to accept that testimony, what weight to give to it, and whether it raises a reasonable doubt in your mind that a man enjoying that reputation would commit such a crime.

However, Ladies and gentlemen, if the Commonwealth has shown to you beyond a reasonable doubt that the defendant is guilty of these crimes, even though he has a good reputation, he is not to go free simply because of it.

So the focus here is whether or not the Commonwealth has proven its case to you beyond a reasonable doubt. (Emphasis added).

Clearly, the trial court's instruction did not properly advise the jury on the use of character evidence. *Neely*, 561 A.2d at 3; Pa.S.S.Crim.J.I. 3.06. Thus, the claim underlying appellant's assertion of post-verdict motion counsel's ineffectiveness is meritorious. In other words, post-verdict motion counsel's failure to preserve this issue was error.

Having found merit in appellant's underlying claim, we turn to the issue of whether counsel's actions were reasonable. In the case *sub judice*, I cannot imagine a reasonable explanation for counsel's failure to insure that this issue was preserved for appellate review. Although counsel cannot be expected to foresee changes in the law, *Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977), counsel must be expected to preserve an issue for appeal when the state of the law governing that issue is in an obvious state of flux.[1] The law regarding character evidence remained unchanged in Pennsylvania jurisprudence for almost one hundred years before our decision in *Neely, supra.* Further, the Bar must remember that our court is the *intermediate* appellate court of this Commonwealth, and, therefore, our *Neely* decision could not serve to overrule a century of jurisprudence unless or until it was affirmed by the Supreme Court of Pennsylvania.[2] Therefore, it was unreason-

1. Counsel's error is readily apparent when one considers that *allocatur* was granted in *Neely, supra,* three months prior to the filing *nunc pro tunc* of post-verdict motions, and our high court rendered its *Neely* decision over five months before appellant's post-verdict motions were denied. I believe effective counsel would have *continued* to preserve the character evidence issue given the fact that *allocatur* had been granted months before counsel filed the *nunc pro tunc* motions. Further, motions counsel certainly should have alerted the trial court to our Supreme Court's *Neely* decision which reversed the very basis of the court's jury instruction. Cf., *Commonwealth v. Dunkle*, 385 Pa.Super. 317, 323, 561 A.2d 5, 8 (1989) (changes in decisional law which occur during litigation will generally be applied to cases pending on appeal).

2. The majority correctly notes that in our *Neely* decision, we did not intend to change the then-existing law. However, the practical effect

able for counsel to fail to preserve this issue. This is especially true given the fact that our Supreme Court filed its *Neely* decision over five months before the lower court rendered its decision on appellant's *nunc pro tunc* post-verdict motions.

In *Commonwealth v. Schultz*, 335 Pa.Super. 306, 484 A.2d 146 (1984), we were faced with a similar situation to that presented herein. In *Schultz*, 484 A.2d at 148, we ruled there could be no reasonable basis for counsel's failure to preserve this issue of an erroneous jury instruction. In so doing, we stated:

> We have chosen to grant a new trial, rather than remand for an evidentiary hearing on counsel's ineffectiveness because we ourselves feel that counsel's failure to object to the lower court's instruction was totally unsubstantiated. In light of our strong sentiments, we believe that a remand for an evidentiary hearing would be a waste of precious judicial time.

*Schultz*, 484 A.2d at 148 n. 4.

Undoubtedly, appellant was prejudiced by the lack of a proper instruction since the jury was never informed that evidence of good character *alone* may be sufficient to raise a reasonable doubt. Therefore, I would also remand this case for a new trial based on the trial court's erroneous jury instruction and post-verdict motion counsel's failure to preserve that issue for review. *See Commonwealth v. Bannerman*, 525 Pa. 264, 579 A.2d 1295 (1990) (Per curiam order remanding case for new trial due to court's failure to comply with *Neely*, 561 A.2d 1).

of our decision was to change the law, as evidenced by our expressly overruling *Commonwealth v. Belmonte*, 349 Pa.Super. 1, 502 A.2d 1241 (1985), alloc. granted 511 Pa. 368, 514 A.2d 1369 (1986), *Commonwealth v. Vander Weele*, 356 Pa.Super. 152, 514 A.2d 189 (1986), *Commonwealth v. Schultz*, 335 Pa.Super. 306, 484 A.2d 146 (1984) and *Commonwealth v. Arenella*, 306 Pa.Super. 119, 452 A.2d 243 (1982), to the extent that those cases held the "in and of itself" language was required. Further, the trial court *sub judice* believed the law regarding instructions on character evidence had been altered by our *Neely* decision.

552

In sum, I join in the opinion of the majority, except as set forth herein. Accordingly, I would remand this case for a new trial not only for the reasons explained by the majority but also because of post-verdict motion counsel's ineffectiveness.

ROWLEY, President Judge, joins this concurring and dissenting Opinion.