J-S56043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                               :             PENNSYLVANIA
                                               :
             v.                              :
                                             :
ROSS RABELOW                      :
                                           :
            Appellant          :    No. 965 EDA 2019

Appeal from the PCRA Order Entered March 6, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0006370-2012

BEFORE: PANELLA, P.J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:           **FILED DECEMBER 17, 2019**

Appellant Ross Rabelow appeals from the order denying his timely first

Post Conviction Relief Act[1] (PCRA) petition without a hearing.  Appellant raises

several claims of trial counsel's ineffective advocacy.  We affirm.

We state the facts as set forth in the trial court's opinion prepared for

Appellant's direct appeal:

> From September 2008 through May of 2012, Appellant owned and operated a company called American Comfort Home Care Services, which was created to defraud . . . seniors into buying worthless contracts for on-demand non-medical home care services, which Appellant never intended to honor.  He, along with his accomplices, Bruce Cherry, Thomas Muldoon and Robert Lerner, sought out seniors who lived alone and induced them into buying these bogus contracts.
>
> . . . In March of 2011, Special Agent Karen Tempinski, an agent assigned to the Insurance Fraud Section of the Attorney General's

---

[1] 42 Pa.C.S. §§ 9541-9546.

Office, began an investigation after she received a complaint about Mr. Cherry, an insurance agent. According to that complaint, Mr. Cherry had taken an insurance premium from a client, Inge Neuhauser, but failed to forward it to her insurance company. While investigating the claim, Ms. Neuhauser provided Agent Tempinski with relevant paperwork. Included with that paperwork was a contract from a company called American Comfort Home Care Services ("American Comfort") that Ms. Neuhauser had purchased from Mr. Cherry.

According to the contract, Ms. Neuhauser had purchased 1,000 hours of in-home non-medical care for $1,590; thereby making it $1.59 per hour of service. According to the contract, services would be provided on demand, with no hospitalization requirement, age limit or deductible.

As Agent Tempinski continued her investigation into Mr. Cherry's activities with his other clients, she found that they also had contracts from American Comfort which were similar to Ms. Neuhauser's contract. [Her investigation revealed that American Comfort sold 245 contracts]. Agent Tempinski's [sic] attempted to locate American Comfort's office, since the address printed on the contract was a UPS mailbox store. This led the agent to the Pennsylvania Department of State Records. One document identified Appellant at 549 Jason Drive, Southampton. Another State Department document related to American Comfort was an application for registration of fictitious name, seeking to use the name National Comfort Home Care Services ("National Comfort"). It was signed by Appellant.

At trial, Agent Tempinski testified that in the course of her investigation, she interviewed about 130 to 140 individuals. The agent compiled two binders full of the contracts, receipts and checks that the individuals provided to her. These binders were introduced and admitted into evidence . . . . In compiling these binders, Agent Tempinski determined that the checks had been deposited in TD Bank, Citizens Bank, Customers Bank, for which she was able to get the bank records. She was also able to retrieve the bank records for the automatic payment service that Appellant used, ACH. . . . In addition, Agent Tempinski compiled numerous additional exhibits summarizing the financial records of American Comfort a/k/a National Comfort. . . . Agent Tempinski testified at trial that from September of 2008 through May 2012, there was a total of $774,060 in deposits and a total of $771,622

in debits, for a net of $2,438. She was able to later determine that of the total amount of money going out of the bank accounts only 4.6% went to services, 93.7% were for expenses other than services and 1.7% of the total amount was unknown. The compiled list of payees showed that some of the non-service payees included commission checks, Appellant's health insurance premium, PECO, Verizon, Appellant's townhouse association fee, Willow Grove Day Camp, Comcast, Nissan Motor, Capital One credit card, Target National Bank, Lowes Home Improvement, HSBC credit card, Home Depot, among others.

At trial, the Commonwealth also presented the testimony of Bruce Cherry, Appellant's business associate and co-conspirator, who was arrested along with Appellant and several other co-conspirators on May 21, 2012. At the time of trial, Mr. Cherry had pleaded guilty in connection with his criminal conduct relating to American Comfort and Global Services. Mr. Cherry explained his association with American Comfort and Appellant as follows. Due to previous brushes with the law, in 2008 he began to work for Appellant's company, American Comfort, as part of a work-release program he had been approved for. When he went to work for Appellant, Mr. Cherry understood that he was to sell American Comfort contracts, which were contracts for non-medical home care services, to elderly clients. Mr. Cherry was expected to use his own client list that he had built up over the years selling legitimate long-term care and home health care insurance . . . . It was Mr. Cherry's understanding that Appellant was the sole owner of American Comfort, and Mr. Cherry was a salesman that got paid by commission. Mr. Cherry told the jury that it was Appellant who was completely in charge of the company, that it was Appellant who signed his commission checks, that no one other than Appellant who had authority to hire or fire anyone or make contractual arrangements on behalf of American Comfort.

Mr. Cherry described that leads were generated in the office by screening phone calls to prospective clients, while Appellant would work on various promotions that could be added on to the original contracts for additional fees. The target audience was for seniors, 65-plus in age. Appellant had set the price of the contract so that the price per hour of service was $1.59. Each contract had a unique number. There was never a full-time employee to provide services to people that requested them. Mr. Cherry testified that important to the sales model was the element of surprise and to have the potential customer alone.

Vital to Mr. Cherry's testimony was his description of how Appellant handled requests for services which were supposed to be provided on demand, per the contractual language. He described how he handled these calls. The strategy was to erect roadblocks. The first hurdle he would erect was to tell the customer that he would have someone get back to them or to call again. Mr. Cherry would then relay the message to Appellant and then give the customers who were trying to obtain services Appellant's 800-number. Mr. Cherry estimated that over the years he worked for Appellant, he received about 30 to 50 requests for services. However, there was no money to pay for services. Looking at [a] compiled list of payees, Mr. Cherry identified the names of the customers who he knows to have requested services. He then identified who if any customers were ever provided services. [Mr. Cherry testified that only one of the 245 customers ever received the full amount of contractually entitled services].

The Commonwealth also presented the testimony of several victimized seniors; several caretakers and/or individuals working in the capacity of power of attorney for several other victimized seniors . . . .

[Appellant] presented multiple character witnesses on Appellant's behalf. Also testifying for the defense was Appellant's father, Arthur Rabelow, and Appellant himself.

Trial Ct. Op. at 1-6 (citations and footnote omitted).

After an eight-day jury trial, a jury found Appellant "guilty of criminal conspiracy, corrupt organizations, 244 counts of theft by deception, 244 counts of deceptive fraudulent business practices, and dealing in proceeds of unlawful activity." *Commonwealth v. Rabelow*, 2985 EDA 2014, 2016 WL 963812, *1 (Pa. Super. filed Mar. 14, 2016) (unpublished memo.). Following a pre-sentence investigation, the trial court sentenced Appellant to an

- 4 -

aggregate sentence of four to forty-four years' imprisonment and $650,000 in restitution.[2] *Id.*

On direct appeal, Appellant raised several issues. In pertinent part, Appellant contended that the Commonwealth was required to have all 245 people who purchased the contracts testify. *Id.* at *2. This Court affirmed, and our Supreme Court denied Appellant's petition for allowance of appeal on September 27, 2016.

On December 22, 2017, the PCRA court docketed Appellant's timely *pro se* PCRA petition. The PCRA court appointed counsel, who ultimately filed a counseled PCRA petition on September 18, 2018. That PCRA petition alleged that trial counsel was ineffective by failing to (1) timely object to an improper jury instruction, (2) provide discovery that could have been used to impeach witnesses, and (3) impeach Commonwealth witnesses. Am. PCRA Pet., 9/18/18, at 5-6. We note that the *pro se* and the counseled PCRA petitions did not attach any formal transcripts or similar documentation of Appellant's phone calls with the victims.

_____

[2] In relevant part, the trial court sentenced Appellant to six months to seven years' imprisonment for conspiracy, a consecutive term of two to twenty years' imprisonment for corrupt organizations, a consecutive term of six months to seven years' imprisonment for all of the theft convictions, and a consecutive term of one to ten years' imprisonment for dealing in the proceeds of unlawful activities. N.T. Sentencing Hr'g, 9/22/14, at 47-49.

The Commonwealth filed an answer, and the PCRA court issued a Pa.R.Crim.P. 907 notice on January 29, 2019. On February 25, 2019, the PCRA court dismissed Appellant's PCRA petition. Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

We quote from Appellant's Rule 1925(b) statement as follows:

> [Appellant] respectfully submits that the [PCRA] court erred in finding his PCRA Petition without merit where his trial counsel was ineffective where trial counsel failed to make a timely objection, did not introduce phone records, and did not take opportunities to impeach key Commonwealth witnesses. Trial counsel did not object to instructions that informed the jury that the Commonwealth was not required to present at trial victims of the alleged conduct. [In Appellant's direct appeal, t]he Superior Court refused to address that issue on the merits, finding that it was waived by trial counsel . . . . [Appellant's] counsel also did not introduce exculpatory recorded calls that would have demonstrated that [Appellant] was responding to inquiries and providing services. [Appellant's] counsel also did not attempt to impeach many critical Commonwealth witnesses.

Rule 1925(b) Statement, 4/3/19, at 1-2 (citations omitted).

Appellant raises one issue on appeal:

> Did the PCRA court err when it dismissed the petition without a hearing notwithstanding the multiple instances of ineffective assistance of counsel asserted in [Appellant's] PCRA petition?

Appellant's Brief at vi.

Appellant raises several arguments in support of this issue. Briefly, Appellant asserts that trial counsel was ineffective for failing to (1) object to the trial court's jury instruction defining reasonable doubt, (2) introduce recordings of his phone calls, and (3) otherwise impeach witnesses.

We begin by stating the standard of review.

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Grayson*, 212 A.3d 1047, 1051 (Pa. Super. 2019) (citation omitted). We have stated that

to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

We have explained that

a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted and some formatting altered), *appeal denied*, 216 A.3d 1029 (Pa. 2019).

We briefly state the following as background for Appellant's first argument. At Appellant's trial, the trial court gave the following jury instruction.

> When you are considering the elements of the various crimes and considering the evidence, if after considering all the evidence you find that the Commonwealth has established beyond a reasonable doubt all the elements of a particular offense that you are considering, then you should find the defendant guilty of that particular offense; otherwise, you must find the defendant not guilty of that particular offense.
>
> Although the Commonwealth must prove every element of a crime beyond a reasonable doubt in order for you to find the defendant guilty of that crime, there is no requirement whatsoever that the Commonwealth do so by having all the victims testify, or that it even have one victim testify the absence of testimony from a victim, the Commonwealth may prove any element of any crime through circumstantial evidence provided by other witnesses or through direct evidence of the crime provided by the testimony of persons other than the victim or victims.
>
> Where the Commonwealth has alleged that a person is a victim and that person has testified, you may, of course, consider that person's testimony in conjunction with any other evidence, circumstantial or direct, in determining whether or not the Commonwealth has proven that the defendant has committed a crime.
>
> You could consider the evidence of a murder case, for example. In that case, of course the victim would be dead and would never be testifying at such a trial.

N.T. Trial, 3/19/14, at 203-04.

In his direct appeal, Appellant attempted to challenge the adequacy of this instruction. This Court held, however, that Appellant waived the issue because his trial counsel did not object prior to the jury commencing deliberation.

In this PCRA appeal, Appellant contends that trial counsel was ineffective by failing to **timely** object to an improper jury instruction. Appellant's Brief at 11. Appellant quotes from direct appeal counsel's appellate brief challenging the instruction on its merits:

> The trial court instructed the jury that the Commonwealth was not required to present any victims of the alleged offenses as witnesses at trial. The trial court referenced a murder case in which the victim cannot be presented as a witness since he/she is deceased. The trial court's instruction relieved the Commonwealth of its burden of establishing the Appellant's guilt beyond a reasonable doubt. The trial court instructed the jury that the Commonwealth was not required to present any alleged victim as a witness at trial and that it could sustain its burden through the testimony of other witnesses, likening the instant matter to a murder prosecution. After the jury was charged and commenced its deliberations, Appellant objected to this portion of the trial court's charge.

*Id.* at 12 (citations omitted and some formatting altered).

Appellant further argues that the instruction was prejudicial because it was misleading:

> First, it implies that alleged victims did not testify in this case because of unavailability or some other good cause. Second, it overlooks the significant distinction that in this instance, unlike a murder case, the Commonwealth has the power to call witnesses by subpoena or otherwise.
>
> The instruction at issue was one of the last instructions given, and significantly after the jury had received general instructions with

> regard to reasonable doubt and the Commonwealth's burden of proof. The instruction implies that the Commonwealth's case-in-chief, which included more than one victim, but significantly fewer than the 246 alleged, was sufficient, and wrongly lends the Court's authority to that conclusion.

*Id.* at 13.[3]

As noted above, a PCRA petitioner must establish that the underlying claim is of arguable merit. In evaluating whether a challenge to a jury instruction has arguable merit, we note the following. "When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error." *Commonwealth v. Johnson*, 192 A.3d 1149, 1153 (Pa. Super. 2018) (citation omitted and some formatting altered). "A trial court's charge to the jury must contain a correct statement of the law. A court is free to use its own form of expression in charging the jury as long as it adequately, accurately and clearly explains the principle of law." *Commonwealth v. Patosky*, 656 A.2d 499, 505-06 (Pa. Super. 1995) (citations omitted). It is well-settled that the Commonwealth may prove theft by circumstantial evidence. *See Commonwealth v. Harrison*, 432 A.2d 1083, 1089 (Pa. Super. 1981); *see also* Pa.S.S.J.I. (Crim.) § 7.02A (2016).

---

[3] Appellant cited no law in support.

- 10 -

Initially, Appellant waived the issue by failing to cite any legal authority in his argument in this appeal. *See Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 883 (Pa. Super. 2019) (holding argument waived when party fails to cite pertinent legal authority). Regardless, on the merits, the challenged jury instruction was not misleading and accurately stated the law. Whether the victims were available to testify or whether the Commonwealth had the subpoena power to compel a victim to testify does not accurately state the law regarding the Commonwealth's burden of proof. None of Appellant's convictions include a statutory element that requires a victim to testify. Indeed, the Commonwealth may prove theft by circumstantial evidence. *See Harrison*, 432 A.2d at 1089.[4] Because Appellant failed to establish the underlying issue has merit, he cannot establish trial counsel was ineffective. *See Sandusky*, 203 A.3d at 1043-44.

Appellant's second argument is that trial counsel was ineffective by failing to use telephone and voice mail recordings that could have either impeached witnesses or exculpated him. Appellant's Brief at 14. Appellant again quotes from his direct appeal argument, specifically a summary of his calls with Jayme Mont, a witness who was satisfied with the services he provided. *Id.* In Appellant's view, his recorded calls with other witnesses

---

[4] The trial court's jury instruction also tracks the content of the suggested jury instruction for circumstantial evidence. *See* Pa.S.S.J.I. (Crim.) § 7.02A.

would have established that he was, in fact, providing contracted-for services and would have undermined the Commonwealth's theory that "he engaged in business practices designed to evade contract obligations." *Id.* at 15. Appellant asserts that such recordings would not have been cumulative as they would have been used for impeachment. *Id.*

Here, in support, Appellant cited caselaw for the proposition that counsel is ineffective when counsel ignores evidence that would establish a viable defense. *See* Appellant's Brief at 15 (citing *Commonwealth v. Perry*, 644 A.2d 705 (Pa. 1994), and *Commonwealth v. Tippens*, 598 A.2d 553 (Pa. Super. 1991)). Appellant, however, failed to explain how such evidence undermined the reliability of the verdict. *See* 42 Pa.C.S. § 9543(a)(2)(ii); *see also United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority or by showing why it is a good point despite a lack of authority . . . forfeits the point. We will not do his research for him."). Therefore, similar to Appellant's first argument, because he failed to cite pertinent caselaw in support, he waived the issue. *See Pi Delta Psi*, 211 A.3d at 883.

In any event, Appellant failed to attach the recordings or some other verifiable transcript of the recordings at issue. We acknowledge that Appellant's *pro se* PCRA petition included some "contract histories" for a few victims, each of which included purported transcriptions of voicemails, interviews, and summaries of in-person meetings. *See, e.g.*, Ex. 11 to

- 12 -

Appellant's *Pro se* PCRA Pet. (Shirley Christman Contract History). The "contract history" for each such witness, however, was unsigned, apparently prepared for Appellant's defense, and lacks any indication about the reliability and accuracy of the transcriptions, including who transcribed them. *See, e.g.*, *id.* On the basis of this deficient record, Appellant cannot establish trial counsel was ineffective.

Third, Appellant argues that trial counsel could have impeached witnesses based on the available record, *i.e.*, without the transcribed recordings discussed above. Appellant's Brief at 15. Specifically, Appellant argues that trial counsel could have impeached unnamed witnesses with their contradictory or inconsistent prior testimony and statements. *Id.* at 16. Appellant asserts that impeachment of those witnesses would have established that they called Mr. Cherry, and not Appellant, and it was Mr. Cherry who was responsible for not following up to provide services. *Id.* at 16-17.

Appellant similarly claims trial counsel was ineffective by failing to impeach witness Robert Dennis. *Id.* According to Appellant, Mr. Dennis testified that Appellant had visited the home of Mr. Dennis's mother and gave Mr. Dennis a business card listing Mr. Cherry's business. *Id.* Appellant argues that trial counsel should have highlighted that particular inconsistency. *Id.*

Initially, other than Mr. Dennis, Appellant did not discuss any other witness. Therefore, to the extent Appellant contends trial counsel was

ineffective by not impeaching unnamed witnesses, Appellant has waived the argument. ***See Commonwealth v. Hakala***, 900 A.2d 404, 407 (Pa. Super. 2006) (holding defendant waived issue by failing to advocate). With respect to Appellant's claim regarding Mr. Dennis, Appellant failed to argue how that particular inconsistency established a reasonable probability that the outcome of the trial would have been different. ***See Sandusky***, 203 A.3d at 1043-44. Appellant does not articulate how Mr. Dennis's testimony that Appellant presented Mr. Cherry's business card undermines confidence in the verdict. ***See id.*** For these reasons, because Appellant has not established legal error, ***see Grayson***, 212 A.3d at 1051, we affirm the order below.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/17/19