560 A.2d 129

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Gordon L. GRAHAM, Appellee.**

Supreme Court of Pennsylvania.

Argued March 10, 1989.

Decided June 5, 1989.

Reargument Denied July 20, 1989.

116

Timothy P. Creany, Dist. Atty., Dennis M. McGlynn, Asst. Dist. Atty., and Patrick T. Kiniry, First Asst. Dist. Atty., Ebensburg, for appellant.

William C. Kaczynski, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue presented for our consideration by this appeal is whether Superior Court erred in finding ineffectiveness of trial counsel (and thus remanding the matter for a new trial), where trial counsel failed to object when the prosecutor, during closing argument, expressed his personal opinion regarding the credibility of the defendant with respect to certain portions of the defendant's testimony.

On January 28, 1982, a search warrant was executed at the residence of appellee, Gordon L. Graham, in Cresson, Pennsylvania, by a six-person team of law enforcement officers. The officers seized, among other items, 26 pounds of marijuana packaged in separate one pound bags, 2,288 tablets of LSD, a .44 Magnum Winchester rifle, a .12 gauge Smith and Wesson shotgun, a .12 gauge Fox double-barrel shotgun, an electronic scale that could be used for weighing small items such as drugs, a sword cane, and approximately $33,000 in cash. As a result of the evidence gathered, appellee was charged with possession with intent to deliver marijuana, possession of LSD, possession of a prohibited offensive weapon, receiving stolen property, and two counts of false reports to law enforcement authorities.[1]

Appellee was tried by a jury in the Court of Common Pleas of Cambria County and was convicted of all charges.

[1]. The counts of false reports to law enforcement authorities were lodged against appellee because the serial numbers of three of the guns seized during the search of appellee's residence matched the

Post-trial motions were denied, and appellee was sentenced to consecutive terms of imprisonment totalling eight to eighteen years. Appellee filed a direct appeal to Superior Court, which affirmed, *Commonwealth v. Graham*, 334 Pa.Super. 170, 482 A.2d 1277 (1984), and we denied appellee's petition for allowance of appeal (368 W.D. Allocatur Docket 1984, petition denied Feb. 25, 1985). A petition for post conviction relief was filed on appellee's behalf by newly retained counsel. Appellee alleged, among other claims, that trial counsel was ineffective for failing to object to the prosecutor's improper closing remarks.

The trial court, following a hearing, denied appellee's petition. Appellee filed an appeal to Superior Court, and that court reversed and remanded for a new trial after determining that trial counsel was ineffective for failing to object to the prosecutor's improper closing remarks. *Commonwealth v. Graham*, 364 Pa.Super. 498, 528 A.2d 620 (1987). Superior Court did not consider any of appellee's other claims of ineffectiveness. The Commonwealth, appellant herein, filed a petition for allowance of appeal to this Court, and we now reverse.

■ The ineffectiveness of counsel is shown where there is merit to the underlying claim, the course chosen by counsel does not have a reasonable basis, and the defendant shows prejudice. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). In the case presently before the Court, the claim underlying appellee's assertion of trial counsel's ineffectiveness involves the prosecutor's expression of personal opinion as to the credibility of certain portions of the appellee's testimony.

Clearly, "it is improper for a prosecutor to express a personal belief or opinion as to the truth or falsity of evidence of defendant's guilt, including the credibility of a witness." *Commonwealth v. Anderson*, 501 Pa. 275, 282, 461 A.2d 208, 211 (1983). This Court, however, has noted that:

serial numbers of three guns which appellee had previously reported as stolen.

[E]ven where the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required. The language must be such that its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." The effect of such remarks depends upon the atmosphere of the trial.

*Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975) (citations omitted).

In addition, we have held that it is not reversible error for the prosecutor to comment that the defendant lied, in cases where the comment "was a fair inference from irrefutable evidence, rather than a broad characterization of the whole of the testimony as a 'big lie.' " *Commonwealth v. Floyd*, 506 Pa. 85, 93, 484 A.2d 365, 369 (1984).[2] Thus, where a witness testifies to plainly impossible or incredible factual situations, the prosecutor (or defense counsel, for that matter) may comment that certain portions of the witness's testimony are unbelievable, and such comment would constitute a fair inference from irrefutable evidence. It would be entirely proper and appropriate, for example, for an attorney to label as incredible, unbelievable, and false, the testimony of a witness who claims that he flapped his arms and was able to fly.

Turning to the case presently before the Court, Superior Court set forth five comments from the prosecutor's closing argument that it determined were improper and on which appellee based his request for a new trial. The first of these comments concerned appellee's attempt to account for the large amount of cash found and seized during the search of his residence. The officers executing the search warrant found approximately $33,000 in cash in appellee's bedroom. Appellee testified that he had saved

**2.** This rule of course assumes that *the whole* of the witness's testimony is *not* a "big lie." If every factual statement made by a witness concerns matters that are incapable of having occurred or existed, then the whole of the testimony could be characterized as a "big lie."

this large sum of money in spite of the fact that he had been employed for only two out of the preceding ten years and that his only income for the five years preceding his arrest was a $900 per month disability check with which he supported himself, his unemployed wife and daughter. The prosecutor argued in closing that it was "just unbelievable, incredible" that appellee could save this $33,000 under these circumstances. Appellee asserts that his trial counsel was ineffective for failing to object to this comment, but there is no merit to this assertion because it *is* unbelievable that appellee, who was supporting his family on the disability income, could save $33,000 in cash.

The second comment that Superior Court found to be improper involved appellee's defense to the charge of possession of marijuana with intent to deliver. Twenty-six pounds of marijuana packaged in one pound bags was seized during the search of appellee's residence. Appellee testified that he grew this marijuana for his personal use and that he planted a new crop every year. He further testified that he smoked 40 marijuana cigarettes a day. A state trooper testified that 27,000 cigarettes could be made from 26 pounds of marijuana. The prosecutor argued during closing that it was "totally unbelievable" that appellee smoked 40 marijuana cigarettes a day and that the 26 pounds of marijuana found at appellee's residence was for his personal use, because this quantity of marijuana would last for years even at the rate of 40 cigarettes a day. Appellee asserts that his trial counsel was ineffective for failing to object to this comment. There is no merit to appellee's assertion, because it *is* unbelievable that appellee smoked this much marijuana, and it would have been mathematically impossible for him to smoke the 26 pounds of marijuana in one year.

The third comment made by the prosecutor during his closing argument that was found to be improper by Superior Court concerned appellee's testimony regarding the stolen electronic scale (used for weighing small items) that was found at appellee's residence during the search. Appellee testified that he met a stranger in a bar and purchased the

scale from him for $150 without knowing how to operate the scale and without knowing whether the scale would work. The prosecutor argued in closing that it was "not in anyway believable" that a person would pay $150 to a total stranger for a scale that might not work. Appellee asserts that his trial counsel was ineffective for failing to object to this comment. There is no merit to this assertion, because it *is* "not in anyway believable" that appellee, who was living on a limited income, would purchase a potentially nonworking scale for $150.

The final comments that Superior Court found to be improper were the prosecutor's references to appellee's testimony regarding the charges of false reports to law enforcement authorities that were filed against him. On November 8, 1980, (one year and three months prior to the search that gave rise to the convictions leading to the present appeal) appellee reported to the Gallitzin Borough police that his residence had been burglarized.[3] Appellee claimed that the stolen items included a .12 gauge Fox shotgun, a .44 Magnum Winchester rifle, a .22 semi-automatic Colt pistol, a .45 caliber Thompson center flintlock pistol, and a .54 caliber Thompson center flintlock rifle.[4] The police chief, who had investigated the alleged burglary, testified that appellee had provided the police with the serial numbers to the .12 guage Fox shotgun and the .44 Magnum Winchester rifle that appellee alleged had been stolen from his residence. These serial numbers matched the serial numbers on the .12 gauge Fox shotgun and .44 Magnum Winchester rifle that were seized during the search of appellee's residence which took place in January of 1982, and which gave rise to the convictions leading to the present appeal. Appellee testified that he had not given

3. Appellee had lived in a trailer in Gallitzin Borough before he moved to the residence in Cresson, Pennsylvania, which was the subject of the search which led to appellee's arrest.

4. Appellee also claimed that a Polaroid camera, several jars of silver quarters and dimes, a tap system, a Bear compound bow and accessories, and a crossbow were taken during the burglary. Appellee submitted a claim for all of these items, including the aforementioned guns, with an estimate of $2,000 in losses to his insurance company, and received $1,000 in insurance proceeds.

serial numbers to the police when he reported the burglary at his residence, and that the police could only have obtained the serial numbers after the guns were seized during the search which led to appellee's present arrest. The prosecutor argued in closing that appellee's accusation that the police chief was lying in this regard was "unbelievable." Appellee asserts that his trial counsel was ineffective for failing to object to this comment. There is no merit to this assertion, because it *is* unbelievable that the serial numbers appearing in the November, 1980, police report would have been obtained during the present search, in that the present search was conducted more than one year *after* the report was filed.

Appellee also testified that his residence was burglarized a second time in May of 1981. At that time, appellee reported to the Gallitzin Borough police that, among other items, a .12 gauge Smith and Wesson shotgun had been stolen from his home.[5] Appellee testified that, due to the disarray caused by the burglar, he was unaware that the shotgun had *not* been taken from his home at the time he reported that it had been stolen and that thus, he lacked the intent to file a false report with the police. He further testified that he found the gun several weeks after the burglary, under his couch. He did not report to the police or to his insurance company that the .12 gauge Smith and Wesson shotgun had been recovered, and he justified his failure to do so on the ground that the insurance proceeds had not completely covered his losses. The prosecutor argued in closing that it was "totally unbelievable" that a burglar would take this shotgun and hide it under the couch. Appellee now asserts that his trial counsel was ineffective for failing to object to the prosecutor's comment. There is no merit to this assertion, because it *is* unbelieva-

---

5. Appellee also claimed that a .25 automatic pistol, a .38 Bulldog pistol, a Canon 35 millimeter camera, a video cassette recorder, a Krako 40 channel CB am/fm radio, a Lake fm cassette player, four pairs of brand new bluejeans, and one Merro cordless telephone had been taken from his residence during the May, 1981, burglary. Again, appellee filed a claim with his insurance company to recover his alleged $2,000 in losses, and again, appellee received $1,000 in insurance proceeds.

ble that a burglar would not remove the shotgun from appellee's residence with the other items stolen and would, in fact, hide appellee's shotgun under his couch (especially in view of appellee's reports to the police and to the insurance company).

Taken individually (and as a whole), in light of the entire record, these assertions that were made by appellee were clearly incredible, unbelievable and false. Therefore, the comments of the prosecutor that portions of appellee's testimony were unbelievable *were* "fair inferences from the irrefutable evidence." Thus, there is no merit to the claim underlying appellee's assertion of the ineffectiveness of his trial counsel.[6]

Accordingly, we reverse the order of Superior Court and remand to Superior Court for disposition of appellee's remaining claims of ineffectiveness.

McDERMOTT, J., joins in this majority opinion and files a concurring opinion.

6. Moreover, the comments of a prosecutor "must be read in their full context, including the defense closing. We may thus determine if the comments were made in fair response to defense argument." *Commonwealth v. Brown*, 490 Pa. 560, 566, 417 A.2d 181, 184 (1980). In the case sub judice, appellee's trial counsel stated on four separate occasions during his closing argument that in his personal opinion, appellee had testified truthfully. For example, defense counsel stated: "In this case, Mr. Graham decided to take the stand, and I believe he testified truthfully on the witness stand." Notes of Testimony at 236 (May 7, 1982). At another point in his closing argument, defense counsel stated: "Mr. Graham told you what he was doing, and he told you what he was not doing. I think he told you that honestly on the stand." *Id.* at 243.

The proscription on the expression of personal opinion during closing argument is not limited to the prosecution. *See* I ABA Standards for Criminal Justice, *The Prosecution Function*, Comment to Standard 3–5.8(b) ("Neither advocate may express personal opinion as to the justice of his or her cause or the veracity of witnesses.") (1980). We have recognized that it is no abuse of discretion for a trial court to refuse to declare a mistrial where the remarks of the prosecutor are inspired in part by the conduct of defense counsel. *Commonwealth v. Stoltzfus, supra.* Although two wrongs do not make a right, otherwise improper comments of the prosecutor are permissible when they merely counter the arguments made by defense counsel, in that such commentary would not have the unavoidable effect of prejudicing the jury.

ZAPPALA, J., concurs in the result.

NIX, C.J., dissents.

McDERMOTT, Justice, concurring.

We cannot condone counsel offering a personal belief on to the credibility of any witness. Suffice it to say counsel is there to present evidence not to testify as to its credibility. There is a major difference, however, between offering one's personal belief and arguing that evidence is unbelievable as offered by a witness. Indeed, it is counsel's function to comment, criticize, expose the content of the evidence of a witness to its own inconsistency, improbability, interest, conflict with other evidence, physical, chemicals, the common sense of the occasion and any other epistemological defect. So long as he does not offer it as true because he personally believes it to be true, his argument has few limits in the search for truth. Absent such a valuation by counsel; that evidence or testimony is true because he believes it, he may argue from literature, history, analogy, examples of universal experience on questions of what is to be believed by ordinary sensible men and women in matters of importance in their own lives. All of which is the function of jurors and the purpose of argument. I join the majority.