566 A.2d 865

**Linda D. ARNOLD, Administratrix of the Estate of Alton P. Arnold, Jr., Deceased, Appellant,**

v.

**James G. ZANGRILLI, M.D., and South Pittsburgh Urologic Associates.**

Superior Court of Pennsylvania.

Argued Jan. 10, 1989.

Filed Oct. 10, 1989.

Reargument Denied Dec. 15, 1989.

104

Byrd R. Brown, Pittsburgh, for appellant.

William Clifford, Pittsburgh, for appellee (submitted).

Before ROWLEY, TAMILIA and KELLY, JJ.

PER CURIAM:

This is an appeal by the widow/administratrix of the estate of Alton P. Arnold, Jr., from a judgment in favor of appellee, Dr. Zangrilli in a medical malpractice action following the death of Mr. Arnold from complications from diabetes. Appellant argues that appellee's counsel made inappropriate and prejudicial comments during the closing argument which warrant a new trial. In addition, appellant argues that the trial court made three erroneous evidentiary rulings: a) he should not have excluded testimony by

appellant as to what Dr. Zangrilli told the decedent after decedent had seen Dr. Zangrilli; b) he should not have precluded appellant's recitation of the decedent's statements indicating his belief, after seeing Dr. Zangrilli, that he did not have diabetes; and c) he denied appellant the opportunity to cross-examine a defense physician/witness about the length of time necessary for obtaining an appointment with a medical specialist. After thoroughly reviewing the record and the arguments of the parties, we affirm.

██ Appellant first argues that a new trial is necessary because appellee's counsel stated in closing argument, "I'm asking you to believe [defendant]. I do and I think there is no reason not to." Although it is true that counsel should not comment on the credibility of witnesses by stating for the jury his or her personal belief about a witness' credibility, such an error does not always require a new trial. *Commonwealth v. Gay*, 369 Pa.Super. 340, 535 A.2d 189 (1988); *Commonwealth v. Sparks*, 351 Pa.Super. 320, 505 A.2d 1002 (1986). In the present case, the objectionable opinion statements by defense counsel occurred near the end of his argument to the jury in which he tried to impress upon the jury all the reasons why they should find the defendant to be credible. In light of the considerable *proper* argument of defense counsel about why the defendant should be believed, the single, brief statement that counsel himself finds the defendant credible was little more than the logical conclusion to the argument being made. Moreover, considering the nature of the defense argument, it would not have been a surprise to the jury to hear that defense counsel believes his client. Reviewing the inappropriate comment by defense counsel as to the veracity of the defendant in the context in which the statement was made, we conclude that the error was not so egregious or prejudicial as to warrant a new trial.

Appellant's argument that the court should have permitted her to testify to what the decedent told her Dr. Zangrilli told the decedent was expressly waived at trial when counsel stated: "I recognize that the first conversation consti-

tutes double hearsay, so I withdraw my offer of proof with respect to that, my colleague having objected." (N.T. 9/22/87, p. 29–30.) Therefore, we will not review that issue on appeal.

Appellant's argument that the trial court erred in precluding her from testifying that the decedent told her that "he did not have sugar," and that the decedent told her the only health problem he had was prostritis is also belied by the record. The trial court ruled that appellant could not testify as to what her husband told her. However, the trial court permitted appellant to testify to her own conclusions drawn from discussions with decedent. In fact, appellant testified that the decedent thought he had prostritis, and that appellant was very, very relieved that he did not have what he thought he had. (N.T. 9/22/87, p. 50.) Thus, in fact, appellant was permitted to testify to the substance of the statements which her husband made to her. We therefore find no error.

Finally, appellant argues that she was improperly denied the opportunity to cross-examine Dr. Zangrilli's expert witness as to how long it takes to obtain an appointment with an internist. A review of the record leaves no doubt that the trial court expressly granted appellant the opportunity to ask the expert how long it takes to get an appointment, and the expert answered the question. Therefore the trial court committed no error.

Judgment affirmed.

KELLY, J., files a dissenting opinion.

KELLY, Judge, dissenting:

I respectfully dissent. For the reasons which follow, I would find merit in appellant's first contention and reverse and remand for a new trial.[1]

Appellant contends that the trial court erred in permitting appellee's counsel to assert his personal opinion as to appel-

1. I note that I agree with the majority as to the disposition of appellant's other claims on appeal.

lee's credibility when the entire defense rested upon the issue of appellee's credibility. Appellant asserts that the prejudicial impact of appellee's counsel's objectionable remarks regarding appellee's credibility was exacerbated by the trial court when counsel's proper objection was denied, and the trial court's instruction left the clear, yet unquestionably incorrect impression that counsel's expression of faith in his client's credibility was a fact to be considered by the jury.

At trial, appellee based his defense upon the fact that he had informed Mr. Arnold, the decedent, that his practice was limited to urology and that he had informed Mr. Arnold that he should go to another doctor. (N.T. 9/23/87 at 133–134, 156, 162.) As a practical matter, the appellee's primary defense rested upon appellee's *uncorroborated* testimony that he properly advised Mr. Arnold to seek alternative care. Thus, appellee's credibility was the lynchpin of his defense.

During closing arguments, appellee's counsel made the following statement:

> Before I get to that, I'm asking you to a great extent on this message here about this conversation, this byplay, this face-to-face, this interaction between physician and patient. I'm asking you to believe Dr. Zangrilli. *I do and I think there is no reason not to.* If the suggestion—

(N.T. 9/25/87 at 21.) (emphasis added).

At that point, appellant's counsel objected to appellee's counsel's expression of personal belief: "Your Honor, I object. *It's not important what he believes or what I believe. It's important what the evidence is and I object to him constantly saying what he believes.*" (N.T. 9/25/87 at 21–22.) (emphasis added). The trial court overruled appellant's counsel's objection, stating: "It's within the bounds. This is argument." (N.T. 9/27/87 at 22.) Appellee's counsel then continued, "Thank you, Your Honor. *So I've asked you to believe him. That's essentially this case.*" (N.T. 9/27/87 at 22.) (emphasis added).

In *Abrams v. Philadelphia Suburban Transportation Company*, 438 Pa. 115, 264 A.2d 702 (1970), our Supreme Court, stated:

> Whether a lawyer's argument to the jury transgresses the bounds of legitimate advocacy is primarily for the discretion of the trial judge, and an appellate court will not interfere with the exercise of this discretion, unless the record manifests that it was clearly abused. *Leasure v. Heller*, 436 Pa. 108, 258 A.2d 855 (1969).

264 A.2d at 704. *See Harvey v. Hassinger*, 315 Pa.Super. 97, 461 A.2d 814 (1983); *see also Boscia v. Massaro*, 365 Pa.Super. 271, 529 A.2d 504 (1987) (*plurality*).

Instantly, I find that the trial court's broad discretion was abused. Credibility was the lynchpin upon which appellee's defense relied. Counsel's remark went straight to the issue of credibility. By clearly and unequivocally expressing his *personal opinion* as to appellee's *credibility*, appellee's counsel in effect switched from the role of advocate to the role of unsworn witness in violation of Pa.R.P.C. 3.4, the advocate/witness rule, the restrictions upon lay or expert opinion evidence as to credibility, and the statutory requirement that all witnesses make an appropriate oath or affirmation to tell the truth before testifying.[2]

I am mindful that comment on the credibility of a witness by itself does not invariably constitute reversible error. *See Commonwealth v. Graham*, 522 Pa. 115, 560 A.2d 129 (1989); *see generally* Annotation, *Propriety and Preju-*

---

**2.** Pa.R.P.C. 3.4, "Fairness to Opposing Party and Counsel," provides in pertinent part:

A lawyer shall not:

(c) when appearing before a tribunal, assert the lawyer's personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but the lawyer may argue, on the lawyer's analysis of the evidence, for any position or conclusion with respect to the matters stated herein; or....

*See also Commonwealth v. Willis*, 380 Pa.Super. 555, 552 A.2d 682 (1988) (advocate/witness rule); *Commonwealth v. Thek*, 376 Pa.Super. 390, 546 A.2d 83 (1988) (expert testimony regarding witness credibility); 42 Pa.C.S.A. § 5901 (every witness must take a judicial oath before giving any testimony).

*dicial Effect of Comments by Counsel Vouching for Cred-
ibility of Witness–State Cases,* 45 A.L.R. 4th 602 (1986 &
1988 supp.). As Justice McDermott stated in his concur-
rence in *Commonwealth v. Graham, supra:*

> ... it is counsel's function to comment, criticize, expose
> the content of the evidence of a witness to its own
> inconsistency, improbability, interest, conflict with other
> evidence, physical, chemicals, the common sense of the
> occasion and any other epistemological defect. *So long
> as he does not offer it as true because he personally
> believes it to be true,* his argument has few limits in the
> search for truth.

560 A.2d at 130 (Slip opinion at 11–12) (emphasis added). In
the case *sub judice,* counsel did precisely what is *not*
permitted; he plainly vouched *personally* for his witness'
credibility.

Even an objectionable improper comment on the credibili-
ty of a witness may not require a new trial, however, if the
trial court responds promptly to opposing counsel's objec-
tion and provides an adequate curative instruction to the
jury. *Accord United States v. Modica,* 663 F.2d 1173 (2nd
Cir.1981). This did not occur here however.

In fact, appellee's counsel's patently improper argu-
ment/testimony regarding his personal belief in appellee's
credibility was improperly *endorsed* rather than properly
*censored* by the trial court's remark that such an expres-
sion of counsel's personal belief was within the bounds of
argument. The jury could reasonably have concluded from
those remarks that the appellee's counsel's statements re-
garding *his belief* in appellee's *credibility* was properly
before them for consideration during jury deliberations. I
find, therefore, that appellee's counsel's remark could rea-
sonably have prejudiced the jury, and thereby tainted the
verdict. *See Draper v. Airco, Inc.,* 580 F.2d 90 (3rd Cir.
1978).

The majority cites *Commonwealth v. Sparks, supra* and
*Commonwealth v. Gay, supra,* to support the proposition
that while "counsel should not comment on the credibility of

witnesses by stating for the jury his or her personal belief about a witness' credibility, such an error does not always require a new trial." Majority Opinion, *supra*, at 105. The majority finds that appellee's counsel's comment that he believed appellee "was little more than the logical conclusion to the argument being made" and, in context, "was not so egregious or prejudicial as to warrant a new trial." *Id.*, at 866. For the reasons which follow, I find that both of the criminal cases cited above may be distinguished from the case *sub judice*, and that the majority's reliance on those cases is misplaced.

In *Commonwealth v. Sparks, supra,* the appellant was convicted of aggravated assault and rape. The appellant contended that the prosecutor, during closing argument, improperly conveyed personal belief regarding the complaining witness' credibility. Specifically, appellant objected to the following statements: "[s]he was honest, she was credible and she was candid," and "[s]he was candid and honest, brutally honest." *Commonwealth v. Sparks, supra,* 351 Pa.Superior Ct. at 326, 505 A.2d at 1005. This Court found that the statements were not expressions of counsel's personal belief, "but when read in context, were part of a larger argument based on the observable events at trial and designed to persuade the jury that the witness deserved to be believed." *Commonwealth v. Sparks, supra,* 351 Pa.Superior Ct. at 327, 505 A.2d at 1006. Excerpts from the prosecutor's closing argument support this finding:

> Try to remember, and I am sure you can, because you were all listening very attentively when Miss Daingerfield (sic) was on the stand, how she appeared. Forget about my questioning her for the moment, but how she appeared when Mr. Perez questioned her. Remember her, she was unflappable. Her story didn't change one iota. He could not impeach her. He could not destroy her. She was too real. She was honest, she was credible and she was candid.
>
> \*        \*        \*        \*        \*        \*

Another thing I want you to remember that she said, besides admitting that she might have been naive in staying there and a little idealistic about believing in him. What did she say? Remember she said on the witness stand, "I trusted him." Who did she look at when she said, "I trusted him?" She looked at him, right at him. You can't beat a witness like that. She was candid and honest, brutally honest. By the way, all those responses were given, I noted, on cross-examination. That means Mr. Perez elicited them through his own questioning.

*Commonwealth v. Sparks, supra,* 351 Pa.Superior Ct. at 326–327, 505 A.2d 1005–1006. The prosecutor based her argument exclusively on events to which the jury itself observed. In the instant case, on the other hand, appellee's counsel's personal comments as to the witness' credibility referred to testimony by appellee regarding an alleged conversation between appellee and the decedent which the jury was obviously not able to observe and assess for itself.

Moreover, in *Commonwealth v. Sparks, supra,* the complaining witness' testimony was substantially corroborated. In the case at bar, appellee's crucial testimony was wholly uncorroborated and thus appellee's credibility was in fact the lynchpin of the defense. Appellee's counsel's improper comments as to his personal opinion of appellee's credibility, which were endorsed by the trial court as proper for jury consideration, were of greater significance in this case than were the far less objectionable remarks in *Sparks.*

In *Commonwealth v. Gay, supra,* the appellant was convicted of aggravated assault, recklessly endangering another person, possession of an instrument of crime, and carrying a firearm without a license on a public street as a result of a nonfatal shooting during a group altercation at a carnival. The only two persons who identified appellant were both on juvenile probation. Defense counsel, at trial, offered their probationary status as evidence and the trial court disallowed its admission. This Court reversed and remanded for a new trial, relying on *Commonwealth v. Evans,* 511 Pa. 214, 512 A.2d 626 (1986).

In *dicta*, this Court stated that the prosecutor should not have told the jury in closing argument that he believed the two identification witnesses. However, this Court found that such a statement, though in error, was not so egregious that standing alone it would require a new trial. Even accepting the persuasive validity of the *dicta* generally, *Gay* is otherwise distinguishable. In the instant case, the statements made by appellee's counsel might not have been so egregious, standing alone, as to warrant the grant of a new trial. However, these statements coupled with the trial court's effective approval of appellee's counsel's statements may have had a significant effect upon the jury. The combined effect could quite possibly have tainted the jury deliberations, and therefore warrants the grant of a new trial.

In conclusion, I would find merit in appellant's first contention, and would reverse and remand for a new trial. Accordingly, I dissent.