656 A.2d 877

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Lawrence Duane CHRISTY, Appellant.**

Supreme Court of Pennsylvania.

Submitted Aug. 31, 1994.

Decided April 5, 1995.

198

John Unkovic, Marketa Sims, Pittsburgh, for Christy.

Fred Speaker, Camp Hill, for amicus.

Patrick T. Kiniry, Johnstown, Christian A. Fisanick, Barnesboro, Robert A. Graci, Chief Deputy Atty. Gen., for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

FLAHERTY, Justice.

Appellant, Lawrence Duane Christy, was convicted by a jury of murder of the first degree in 1983 [1] and was subsequently sentenced to death. On direct appeal, this court affirmed the conviction and sentence. *Commonwealth v. Christy*, 511 Pa. 490, 515 A.2d 832 (1986), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 857 (1987). The Governor signed an execution warrant in September, 1992 and, on November 9, 1992, the court of common pleas entered an order staying execution until further order.

Subsequently, pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546, appellant filed, through his pro bono counsel, a PCRA petition alleging: (1) prosecutorial misconduct; (2) ineffective assistance of trial counsel; (3) a denial of due process; (4) a denial of a right to present evidence of his psychiatric history. The court of common pleas denied post-conviction relief and vacated the stay of execution. This appeal followed. We affirm.

---

1. Appellant was convicted of first degree murder of Mr. James Volk. The record reflects that appellant decided to rob the Oriental Ballroom in Gallitzan in the early morning hours of June 16, 1980. Once inside, appellant encountered Volk who was the Ballroom's night watchman. Volk shot at appellant and wounded him slightly. Believing that appellant was seriously hurt, Volk placed his gun on the bar. Appellant then grabbed the gun. Volk approached appellant slowly with no weapon and appellant shot Volk twice. Volk was on his knees, choking and gagging, when appellant shot Volk a third time in the back of Volk's head. Appellant then took Volk's wallet and left. Appellant confessed to the murder in an interview with the police and on the witness stand during trial.

Appellant is required by 42 Pa.C.S. § 9543 to demonstrate eligibility for relief under the PCRA. Section 9543(a) mandates that appellant's allegation of error has not been previously litigated and that other conditions have been met. An issue has been previously litigated when "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue...." 42 Pa.C.S. § 9544(a)(2).

When claims are deemed not previously litigated, appellant must comply with the other conditions of 42 Pa.C.S. § 9543. 42 Pa.C.S. § 9543(a)(3) states:

> That the allegation of error has not been previously litigated and one of the following applies:
>
> (i) The allegation of error has not been waived.
>
> (ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.
>
> (iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

42 Pa.C.S. § 9544(b) provides that an issue has been waived "if the petitioner failed to raise it and if it could have been raised ... at the trial, [or] on appeal...." Because appellant could have raised all of his claims on direct appeal and did not, these issues must be deemed waived under § 9544 unless 42 Pa.C.S. § 9543(a)(3)(ii) or (iii) applies, such as in the case of a showing of ineffective assistance of counsel.

 Ineffective assistance of counsel will excuse the waiver under the PCRA as long as the appellant had a constitutional right to counsel at the stage in the state proceedings where counsel's ineffectiveness resulted in the waiver. *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The accused has a constitutional right to counsel on direct appeal but not in state collateral proceedings. *Murray v. Giarratano,* 492 U.S. 1, 3–4, 109 S.Ct. 2765, 2766–67, 106 L.Ed.2d 1 (1989); *Pennsylvania v. Finley,* 481 U.S. 551,

555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987). In appellant's case, ineffective assistance of counsel will excuse the waiver only as to claims of ineffectiveness of counsel at trial and on direct appeal, and provided the standards announced in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987) and its progeny are met.

*Commonwealth v. Pierce*, 515 Pa. 153, 158–59, 527 A.2d 973, 975–76 (1987) mandates that when an appellant argues that he was deprived of effective assistance of counsel, appellant must demonstrate: (1) that the underlying claim is of arguable merit; (2) that counsel's performance was unreasonable; and (3) that counsel's ineffectiveness prejudiced defendant. Appellant's claim fails where a claim has arguable merit but appellant fails to demonstrate that the result of the case would have been different, i.e., that prejudice resulted. *Commonwealth v. Edmiston*, 535 Pa. 210, 239, 634 A.2d 1078, 1092–93 (1993). Also, post-conviction review of claims previously litigated on appeal cannot be obtained by alleging ineffective assistance of prior counsel and by presenting new theories of relief to support previously litigated claims. *Commonwealth v. Wilson*, 452 Pa. 376, 378–79, 305 A.2d 9, 10–11 (1973). Further, counsel cannot be considered ineffective for failing to assert a meritless claim. *Commonwealth v. Pursell*, 508 Pa. 212, 224, 495 A.2d 183, 189 (1985).

Appellant first argues that he must be given a new trial or a new sentencing hearing because his conviction and death sentence violated his constitutional rights set out in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).[2] In *Ake*, the Court held that where a defendant has made a preliminary showing that his sanity at the time of the crime is likely to be a significant factor at trial and the

**2.** Appellant's discussion of *Ake* presupposes *Ake* has retroactive application to his case. While appellant's case was pending on direct appeal to this court, *Ake* was decided. Neither the Supreme Court nor this court has determined whether *Ake* is to be given retroactive application to cases on direct appeal. In appellant's case, due to the extraordinary circumstance that this is a capital case and that this court did not address any of the *Ake* issues before, we will deem the *Ake* issues not waived and will address *Ake* retroactively.

defendant cannot otherwise afford a psychiatrist's assistance, a state must provide access to such assistance on the sanity issue in the preparation, trial and sentencing phases because the risk of an inaccurate resolution of sanity issues is extremely high. *Id.* at 74, 80 and 82, 105 S.Ct. at 1091, 1094–95 and 1096.[3] The Court reasoned that appellant had a compelling interest to a fair adjudication at the penalty phase and the state had an interest in assuring that its ultimate sanction is not erroneously imposed. *Id.* at 83, 105 S.Ct. at 1096.

This court has narrowly defined the scope of *Ake.* In *Commonwealth v. Yarris,* 519 Pa. 571, 606, 549 A.2d 513, 531 (1988), we held that indigent defendants are entitled to have cost-free access to psychiatric experts only in "very limited circumstances" where the defendant's sanity at the time of the offense was to be a significant factor at trial. In Pennsylvania, a diagnosis of personality disorder is irrelevant to an insanity defense. *Commonwealth v. Weinstein,* 499 Pa. 106, 113, 114, 451 A.2d 1344, 1347 (1982). Further, Pennsylvania's version of the diminished capacity defense applies only to evidence affecting "cognitive functions necessary to formulate a specific intent." *Id.,* 499 Pa. 106, 114, 451 A.2d 1344, 1347 (1982). Appellant argues, in effect, that *Ake* applies whenever a defendant's psychiatric condition is a significant issue at trial. We disagree and continue to hold that *Ake* mandates state assistance only where sanity at the time of the offense is a significant issue at trial.

In appellant's case, appellant's sanity was not a significant issue at trial. Trial counsel decided not pursue an

---

3. According to the Court, Ake's sanity was a significant issue at his trial because: (1) insanity was his sole defense; (2) his behavior at arraignment, which took place four months after the crime, was so bizarre as to prompt the trial judge, sua sponte, to have him examined for competency; (3) a state psychiatrist found Ake to be incompetent to stand trial and suggested commitment; (4) Ake was only made competent to stand trial through large doses of Thorazine; and, (5) the state doctor concluded that Ake's mental illness was severe, longstanding and persistent. *Id.* at 86, 105 S.Ct. at 1097–98. The Court expressed no opinion as to whether any of these factors, alone or in combination, was necessary to make this finding. *Ake,* 470 U.S. at 86 n. 12, 105 S.Ct. at 1098 n. 12.

insanity defense and, instead, proceeded on theories of self-defense and diminished capacity. The record reflects that the trial court had ordered independent psychiatric evaluations of appellant by two psychiatrists, both of whom concluded that appellant was competent to stand trial and sane at the time of the offense.[4] This court found no ineffective assistance of counsel for the alleged failure to raise an insanity defense. *Commonwealth v. Christy*, 511 Pa. 490, 499–500, 515 A.2d 832, 837 (1986). Further, appellant presented no evidence at any hearing that he could avail himself of the insanity defense. Appellant's evidence at the PCRA hearing was that he suffers from a "personality disorder" and has an "anti-social personality." Such evidence would not have been admissible at trial on the issue of whether the evidence met the M'Naghten test for insanity. 18 Pa.C.S. § 315. *See Commonwealth v. Weinstein, supra,* and *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). Therefore, *Ake* does not apply because appellant's sanity was not a significant issue at trial.[5]

---

**4.** The trial court first appointed Dr. Olivier, a psychiatrist, who "could find no evidence whatsoever, either from the subject or from other sources, to suggest that he was not responsible under the M'Naghten Rules." *Commonwealth v. Christy,* 511 Pa. at 499, 515 A.2d at 837. When Dr. Olivier was not available for cross-examination, the court, on its own motion, ordered an examination by Dr. Chavern, another psychiatrist. Dr. Chavern also concluded that appellant was sane at the time of the offense and competent to stand trial. Dr. Chavern testified against appellant at the pre-trial hearing on appellant's competency and was subject to cross-examination.

**5.** Appellee urges that if *Ake* applied here, its mandates were met. The court appointed no expert to assist appellant. While we have ruled that *Ake* does not apply to a case where sanity is not a significant issue, we are not persuaded that if *Ake* applied, its mandates were met.

Appellant also argues that the trial court erred when it refused to grant psychiatric assistance to challenge the voluntariness of his confession. The Court ruled in *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473 (1986) that a confession by a person suffering from a mental illness is admissible and the voluntariness issue could only be raised where coercive police activity has been shown. *See also Commonwealth v. Bracey,* 501 Pa. 356, 369, 461 A.2d 775, 782 (1983) (defendant not protected from confession originating from an internal compulsion because of mental disease). Appellant's claim is meritless because the voluntariness of the confession has been already litigated, *Commonwealth v. Christy,* 511 Pa. at 506 n. 5, 515 A.2d at 840

 Appellant then argues that under *Ake*, he had a due process right to psychiatric assistance at sentencing. A defendant is entitled to psychiatric assistance at the penalty phase of a trial where the prosecution has presented evidence of a defendant's "future dangerousness." *Ake*, 470 U.S. at 83–84, 105 S.Ct. at 1096. The *Ake* Court concluded that since the state had introduced psychiatric evidence of Ake's future dangerousness as an aggravating factor at sentencing, Ake was entitled to a defense expert to combat this evidence. *Id.*

Pennsylvania's death penalty statute expressly provides for two psychologically based mitigating factors: (1) defendant was under the influence of an extreme mental or emotional disturbance at the time of the offense; and, (2) the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. 42 Pa.C.S. §§ 9711(e)(2) and (e)(3). The sentencing jury in appellant's case was not presented with any expert evidence to support the application of either of these two factors. The record reflects: the prosecutor referred to the "future dangerousness" of appellant in his closing argument in the penalty phase of appellant's case;[6] the defense raised one psychiatric mitigating circumstance, i.e., "the defendant was under the influence of extreme mental or emotional disturbance" which counsel argued, without the

n. 5 and because appellant has shown no evidence of coercive police conduct or that appellant's confession was anything other than voluntary.

6. At the sentencing hearing, the Commonwealth made the following references in closing:

He is so bad we can't keep him in jail.... [Appellant] is the Great Manipulator, because he can get and he can do whatever he wants again and again and again.... Close the door. Don't let it revolve.... The penalty must be death.... Does this mean he should go back? ... Where is the protective element? ... But just how long is for life.... If the law is the only thing that separates us from total destruction. You live by the law. Mr. Christy must die by the law.... Larry himself told you the system must not work.... You, Ladies and Gentlemen, are the final straw. The system didn't work.... Now we go down to grass roots.... Let your words ring out. Let your message be very clear to Larry Christy. You are not going to be another victim of the manipulator.

*See Commonwealth v. Christy*, 511 Pa. at 511, 515 A.2d at 842.

benefit of psychiatric assistance, was a result of years of drug and alcohol abuse; and, appellant presented evidence at the PCRA hearing that defense psychiatric assistance could have helped appellant in presenting mitigating evidence.

The critical question is whether *Ake* applies to the sentencing phase of appellant's case. While appellant's "dangerousness" was addressed by the prosecutor in his closing argument to the sentencing jury, the prosecutor offered no evidence, as was done in *Ake,* regarding appellant's "future dangerousness." [7] Appellant appears to argue that *Ake* requires defense psychiatric assistance to prove mitigating circumstances where the prosecutor has raised the issue of a defendant's "future dangerousness." Yet, the clear message of *Ake* is that state-paid psychiatric assistance is required where it is needed to rebut the prosecution's evidence of "future dangerousness." We recognize that there are times when the psychiatric evidence rebutting the "dangerousness" claim is evidence that proves a mitigating circumstance. That was the case in *Ake* where the psychiatric evidence was that Ake's mental condition made him a danger only to elderly people and not to the public at large. Thus, the evidence tended to negate the prosecutor's claim that Ake was a danger to society at large. In appellant's case, the psychiatric evidence sought to be admitted would not have rebutted the prosecutor's closing comments that appellant was a danger to society for, based on the PCRA record, the psychiatric evidence demonstrated that he was such a danger. Thus, we hold that *Ake* mandates state-paid psychiatric assistance in the sentencing phase only where the assistance would be useful to rebut the prosecution's assertion, in closing or otherwise, of the defendant's "future dangerousness" to society. *Ake* does not apply here and appellant's claim has no merit.

 Appellant's second argument is that he was denied his due process right to present evidence of his psychiatric history through medical records and his own testimony and counsel was ineffective for failing to try to present such

7. It is noted that "future dangerousness" is not a valid aggravating circumstance in Pennsylvania. 42 Pa.C.S. § 9711.

evidence at trial. Appellant contends that the trial court's denial of his offer to introduce his psychiatric records and its refusal to permit him to testify as to the diagnoses he received while hospitalized unconstitutionally foreclosed a psychiatric defense. Pennsylvania permits, as an exception to the hearsay rule, the admission into evidence of medical records, as business records, to show the fact of hospitalization, treatment prescribed, and symptoms manifested. *Commonwealth v. DiGiacomo*, 463 Pa. 449, 455, 345 A.2d 605, 608 (1975). *DiGiacomo* was not authority in appellant's case for the admission of opinions and diagnoses contained in business records, a practice which is proper in the federal system.[8]

▮ The record reflects that the court denied admittance of two psychiatric reports during the competency hearing[9] because admittance was sought to place the diagnoses contained therein before the court. While the reports could have properly been admitted for the limited purpose of the business records rule, neither the reports nor appellant's testimony could be admitted for the purpose of proving appellant's diagnoses without testimony from the physicians or the applicability of some other exception to the hearsay rule.[10]

▮ Further, any error was harmless and not prejudicial. Prejudicial error must so undermine the truth-determining

8. Opinions and diagnoses contained in business records are admissible under the Federal Rules of Evidence, Rule 803(6).

9. The record reflects that counsel did not seek to introduce the reports into evidence during either the guilt or penalty phase of the trial. The PCRA court ruled that counsel had waived this issue by not attempting to reintroduce the records after the court excluded them and, further, was not ineffective for failing to do so because the nonaction was reasonably based in light of the potentially damaging information contained in them. PCRA Court Opinion, 13. We agree since no error or prejudice has been demonstrated.

10. Appellant also argues that the reports were admissible for the diagnoses contained therein because the physicians were unavailable. The record reflects that the Commonwealth's Attorney General refused to produce the state hospital physicians who had treated appellant and counsel said that, due to the passage of time, other treating physicians could not be located. This argument is meritless in light of the fact that counsel did not seek admission of the records at either the guilt or penalty phase, which failure did not constitute ineffective assistance of counsel.

process that no reliable adjudication of guilt or innocence (or penalty) could have taken place. 42 Pa.C.S. § 9543(a)(2)(i). Appellant did present some evidence of his mental state and his substance abuse on the night of the murder. Yet, as the PCRA court observed, presentation of more in-depth evidence of his psychiatric and psychological makeup would likely have had a negative impact on the jury because appellant would have been portrayed as a highly dangerous person who could kill again.[11] In light of other evidence in the record, the error did not undermine the truth-determining process or affect the outcome and was, therefore, harmless. Finally, counsel was not ineffective for failing to raise a meritless claim.[12]

Appellant's third argument is that the prosecution's closing arguments during the guilt and sentencing phases deprived appellant of his constitutional right to a fair trial and, further, that counsel was ineffective for failing to object to the closing. The issue regarding the closing at the sentencing hearing was addressed on direct appeal and found not to prejudice the jury's finding of the aggravating circumstance that lead to the imposition of the death sentence. *Commonwealth v. Christy,* 511 Pa. 490, 511, 515 A.2d 832, 842–43 (1986).[13]

11. *See Commonwealth v. Yarris,* 519 Pa. 571, 602, 549 A.2d 513, 529 (1988) (notations concerning defendant's behavior and dangerousness contained in records might have been detrimental to case; no error for tactical decision not to present such evidence.)

12. Appellant also argues that he was precluded by the court's ruling from raising a defense under *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). There, the defendant was prevented from presenting critical evidence on the only defense raised, i.e., that another man had confessed to a murder. The defendant argued that the state's "vouching" rule against impeaching one's own witness and the state's hearsay rule combined to prevent the defendant from calling and cross-examining the confessor and other witnesses who had heard the confession. The Court ruled that the defendant had a due process right to present hearsay evidence of another's guilt where that testimony in the circumstances is likely to be trustworthy. *Id.* at 302, 93 S.Ct. at 1049. Appellant's argument fails because no evidentiary rule and nothing in the court's ruling at the competency hearing prevented appellant from presenting testimony of experts at trial regarding the opinions in the medical records.

13. Appellant argues that the comments should now be deemed prejudicial in light of intervening case law of the Third Circuit. In appellant's direct appeal, this court relied on *Commonwealth v. Travaglia,* 502 Pa.

 The issue here is the propriety of the prosecutor's closing remarks during the guilt phase.[14] A prosecutor is permitted to exercise latitude in presenting a case to the jury. *Commonwealth v. D'Amato*, 514 Pa. 471, 489, 526 A.2d 300, 309 (1987). A new trial will not be granted unless it is inevitable that the prosecutor's remarks prejudiced the jury, forming in their minds a fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict. *Commonwealth v. Graham*, 522 Pa. 115, 560 A.2d 129 (1989).

 Appellant claims that the prosecutor exceeded acceptable bounds by his urging that appellant's defenses of diminished capacity and self-defense were baseless, that appellant had spent his life feigning mental illness to avoid punishment, that appellant was a "great manipulator" who had gotten himself committed to state hospitals, and that he would kill again if the jury did not end his "manipulations." Appellant also argues as improper the prosecutor's reference to appellant's "drug and alcohol abuse coupled with some unknown, unnamed mental illness [which] reduced his mental capacity." Appellant contends the prosecutor was well acquainted with

474, 467 A.2d 288, 302 (1983) where this court held as permissible oratorical flair the prosecutor's comments that "... the score is ... Travaglia two, society nothing.... Who is going to make it stop? ... That's your duty." Travaglia's codefendant, Lesko, brought a habeas corpus petition challenging the comment. The court ruled that Lesko had been denied due process because the comment was "calculated to incite an unreasonable and retaliatory sentencing decision, rather than a decision based on a reasoned moral response to the evidence." *Lesko v. Lehman*, 925 F.2d 1527, 1545–46 (3rd Cir.), *cert. denied*, 502 U.S. 898, 112 S.Ct. 273, 116 L.Ed.2d 226 (1991). The case reflected other prosecutorial misconduct, such as commenting on the defendant's failure to testify and lack of remorse.

An issue is not previously litigated as to a case on direct appeal when an intervening decision by the Third Circuit Court of Appeals changes the law. *Commonwealth ex rel. Berkery v. Myers*, 429 Pa. 378, 386–88, 239 A.2d 805, 809–10 (1968). *Lesko* was decided after appellant's case became final on direct appeal and will not be applied retroactively.

14. The Commonwealth argues that the right to raise this issue has been waived by the failure to present it on direct appeal. While that is ordinarily true, extraordinary circumstances exist because this is a capital case and, therefore, we will consider it. 42 Pa.C.S. § 9544(b).

appellant's diagnoses as he had been the Commonwealth's Mental Health Review Officer and had repeatedly recommended appellant's involuntary commitment to state mental hospitals. Appellant then argues as improper the prosecutor's comments on appellant's failure to prove his mental condition: "if that testimony was available you would have heard, but you didn't hear it; therefore, you can logically draw the assumption that he is medically and mentally fit; more importantly, responsible for his actions." Appellant claims that the prosecutor's arguments clearly had a prejudicial impact because the jury was told to assume that appellant had failed to introduce any medical evidence because such evidence did not exist, when the prosecutor knew that the evidence did exist but had been kept from the jury by the Commonwealth's refusal to allow its state doctors to testify or by the court in its ruling on the medical records.

The prosecutor's remarks at the guilt phase were not outside permissible boundaries of oratorical flair. Appellant has not demonstrated that the remarks interfered with the jury's ability to render a true verdict of guilt or otherwise prejudiced him in light of the overwhelming evidence of his guilt. This claim is meritless.

Appellant's fourth, argument is that the trial court's instructions to the jury deprived appellant of due process. Appellant argues that the trial court gave improper jury instructions in three areas: diminished capacity, self-defense and voluntariness of a confession.[15] Appellant first argues that the charge on diminished capacity erroneously instructed the jury that it was appellant's responsibility to prove beyond a reasonable doubt that he was so drugged or intoxicated that he was incapable of forming the specific intent to kill. The PCRA court quoted the relevant portion of the court's charge as follows:

15. Again, the Commonwealth argues that the right to raise this issue has been waived by the failure to present it on direct appeal. Extraordinary circumstances exist because this is a capital case. 42 Pa.C.S. § 9544(b).

One of the specific elements of murder in the first degree is indeed the specific intent to kill. The Commonwealth has the burden of disproving this defense; thus you cannot find the defendant guilty of first degree murder unless you are satisfied beyond a reasonable doubt that the defendant was not so intoxicated or drugged at the time that he was incapable of judging his acts and that their consequences or incapable of forming a willful, deliberate and premeditated design to kill.

Voluntary intoxication or drug condition if it exists to the extent that you would accept it to indicate that the defendant did not have the required specific intent to kill would then be used to reduce the crime of first degree murder to a crime of third degree murder.

I therefore must charge you on the elements necessary to find a person guilty of murder in the third degree. Although the defendant Lawrence Christy is not specifically charged with murder in the third degree, or voluntary manslaughter or involuntary manslaughter, you, as finders of fact, may consider these as possible verdicts to be returned if the elements of the other crimes have not been proven to your satisfaction beyond a reasonable doubt. My last instruction was as to the use of voluntary intoxicants and drug condition, that if you, in the testimony that was presented are satisfied beyond a reasonable doubt that on the morning of the 16th of June, 1980, Lawrence Christy was, in fact, so drugged and/or intoxicated that he was not capable of forming a specific intent to kill, you could then— but all of the other elements of murder of the first degree would be present—then you would consider the murder in the third degree. Murder of the third degree is [sic] defined by our statute means that any other murder which is not murder of the first degree or of the second degree is murder of the third degree.

While certain portions of the above charge may be unclear, the charge, when considered in its entirety beyond what is quoted above, correctly informed the jury that the Commonwealth bore the burden of disproving the diminished capacity defense.

■ Appellant next claims that the court failed to instruct on the burden of proof for appellant's self-defense claim. Since the trial court is required to instruct the jury that the Commonwealth must disprove the defense beyond a reasonable doubt, the question is whether prejudicial error exists. As the PCRA court concluded, the record reflects no evidence that was presented at trial that would warrant a finding by the jury of self-defense and, thus, that would warrant an instruction on self-defense. Appellant was the aggressor by breaking into the establishment, was not free from fault in provoking or continuing the situation which resulted in the killing, failed to show that the force used was necessary to save himself, and violated his duty to retreat. In these circumstances, he was not entitled to a claim of self-defense. *Commonwealth v. Tilley*, 528 Pa. 125, 595 A.2d 575 (1991). Since an instruction on self-defense was not warranted, the court's error was harmless.

■ Appellant's fifth claim is a series of seven contentions all grounded in a claim of ineffective assistance of counsel. Most of these contentions have been previously litigated. 42 Pa.C.S. § 9543(a)(3).[16] Nevertheless, in light of the circumstances of this appeal, we will briefly address the claims.

■ Appellant's first claim is that trial counsel was ineffective for failing to investigate and present available testimony and medical record evidence of appellant's long history of psychiatric treatment. The claims concerning medical records and appellant's testimony and counsel's ineffectiveness have no merit, as discussed above. Appellant argues that counsel should have subpoenaed state personnel because he had a constitutional right to compulsory process for obtaining witnesses in his favor. *Lewis v. Lebanon Court of Common Pleas*, 436 Pa. 296, 303, 260 A.2d 184, 189 (1969). Appellant

---

16. Appellant argues many times throughout his brief that because appellant's case was lead trial counsel's first murder case and second criminal case and because counsel had practiced for less than three years, trial counsel must have been ineffective. Inexperience is not the equivalent of ineffectiveness. Again, the test for ineffectiveness in this Commonwealth is that articulated in *Commonwealth v. Pierce* and its progeny.

has not demonstrated that the personnel would be witnesses in his favor, particularly since they had basically concluded appellant had disorders that were classified non-cognitive and, thus, supported no defense recognized in Pennsylvania.[17] Such alleged failure has not been shown to be error or prejudicial to appellant's case.

Appellant also argues that counsel was ineffective for failing to request the appointment of a defense psychiatric expert under the Mental Health Procedures Act ("MHPA"). 50 Pa.S. § 7402(f). Under the MHPA, a defense expert is to be appointed at county expense when a defendant has a substantial objection to the findings of a court-appointed expert. The court-appointed experts in appellant's case concluded that appellant was competent to stand trial and sane at the time of the offense. Appellant presented no evidence at the PCRA hearing that he had a reasonable basis for substantial objection to those findings. Appellant, therefore, has failed to demonstrate error or prejudice.

Appellant further argues that trial counsel failed to challenge the voluntariness of appellant's confession in light of his behavior a few weeks before and after his confession. The proper inquiry is whether the confession at the time it is given is voluntary and knowing. Appellant fails to demonstrate that

17. Appellant argues that these witnesses had exculpatory evidence with respect to guilt and sentencing and, thus, the Commonwealth was required to produce them pursuant to *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) and Pennsylvania Rule of Criminal Procedure 305. Appellant further cites to *Commonwealth v. Potts,* 486 Pa. 509, 513, 406 A.2d 1007, 1009 (1979) for the proposition that counsel's decision not to present relevant psychiatric testimony was as damaging to the truthfinding process as the failure to present the testimony of available witnesses.

Neither argument is persuasive. *Brady* dealt with evidence which exculpated the defendant of responsibility. Here, the psychiatric evidence would not have exculpated appellant for the evidence would not have demonstrated an insanity defense. Further, with respect to the diminished capacity defense, the PCRA record reflects that the evidence was weak at best for little of it supported the "cognitive" aspect of that defense. With regard to *Potts,* one must keep in mind that an element of counsel's decision to present any evidence is its probable impact on the jury. Appellant has not demonstrated how the *Potts* test was met in this case.

the confession was not voluntary and knowing when made to the state trooper or when repeated during the trial. Appellant's claim lacks merit.

■■■ Appellant next claims that trial counsel was ineffective for making an incorrect closing statement and for failing to object, as inflammatory, to the appellant's demonstration of the victim's death. Trial counsel incorrectly stated: "all twelve of you are going to have to agree on whatever decision that you make [concerning life or death]." Such error was not prejudicial because the trial court's charge to the jury reflected an accurate statement of the law. Also, appellant fails to demonstrate how the alleged improper demonstration by him of the victim's death was inflammatory or prejudicial. Both claims lack merit.

Appellant then claims trial counsel was ineffective for failing to object to the prosecutor's alleged inflammatory remarks in closing argument at both the guilt and penalty phase, especially the prosecution's suggestion that appellant had feigned mental illness.[18] As discussed above, there is no merit to the underlying claim and appellant has demonstrated no error by counsel and no prejudice, given the overwhelming evidence of guilt. Appellant's claim fails.

■■■ Finally, appellant claims trial counsel was ineffective for failing to object to alleged prejudicial testimony. In this claim, appellant raises ten subpoints, all dealing with trial statements concerning appellant's time spent in jail. Where evidence of prior criminal conduct unjustifiably blackens the character of a defendant in the minds of the jury, reversible error occurs. *Commonwealth v. Spruill*, 480 Pa. 601, 607, 391 A.2d 1048, 1051 (1978). All of these subpoints were either

18. This issue was finally litigated on direct appeal. It is noted that Mr. Chief Justice Nix and Mr. Justice Zappala dissented, concluding that defense counsel should have objected because the statements regarding "feigned mental illness" had a prejudicial impact in the sentencing phase, not the guilt phase, on the jury's finding of no mitigating circumstances. *Commonwealth v. Christy*, 511 Pa. at 519, 515 A.2d at 845–47.

addressed on direct appeal or have not been shown by appellant to have merit or cause prejudice.

 Appellant's next claim is that he was deprived of his due process rights by the introduction of alleged false testimony of his cousin, Daniel Christy. Appellant argues that his conviction was based on the perjured testimony of his cousin who testified that appellant boasted about the murder of the victim, lacked remorse and had committed other crimes. The cousin disclaimed, during his testimony, any "deal" with the Commonwealth officers in exchange for his testimony. Appellant claims a "deal" existed; however, he has failed to demonstrate a deal. Rather, appellant demonstrates only that the prosecution said that it would bring the cousin's testimony to the attention of the appropriate authorities that were adjudicating criminal charges against the cousin, only if the prosecutors considered the cousin's testimony to be given in a truthful fashion. This claim is meritless.[19]

Appellant's final argument is that the trial court erred when it failed to inform the sentencing jury that, if the jury imposed a life sentence, appellant was ineligible for parole and that the prosecution's repeated suggestion that only a sentence of death would prevent appellant from returning to society mandated this instruction. Appellant essentially argues that, under the authority of *Simmons v. South Carolina*, 512 U.S. ——, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994),[20] the trial court erred by failing to instruct the sentencing jury that "life sentence" means "life without parole."[21]

**19.** Appellant also claims that he was denied his due process rights because the prosecution suppressed material impeachment evidence. Appellant argues that the relevant authorities should have turned over to the defense prior to the trial the evidence concerning the deal with his cousin. As stated above, appellant has failed to demonstrate a deal. Thus, he has failed to demonstrate any error or prejudice.

**20.** This court granted appellant permission on August 31, 1994, to file a supplemental brief limited to the issue of the impact of *Simmons v. South Carolina*, 512 U.S. ——, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994).

**21.** The record reflects that neither appellant nor the jury requested an instruction concerning the definition of "life sentence."

In *Simmons,* the defendant was tried for the murder of an elderly woman. During closing arguments at the penalty phase, the prosecution argued that in fixing Simmons' punishment, the jury should consider his future dangerousness. Simmons' counsel sought to rebut the prosecution's future dangerousness contention by presenting evidence that, due to Simmons' particular psychological problems, he was dangerous only to elderly women who would not be found in a prison setting. Counsel asked the court to instruct the jury that, under South Carolina law, a sentence of life imprisonment did not carry any possibility of parole. The trial court refused to grant the requested instruction and Simmons was sentenced to death.

The Court reversed, ruling that Simmons had been denied due process. The Court reasoned that the jury reasonably may have believed that petitioner could be released on parole if he were not executed and, to the extent that this misunderstanding pervaded the jury's deliberations, it had the effect of creating a false choice between sentencing petitioner to death and sentencing him to a limited period of incarceration. *Simmons,* 512 U.S. at ——, 114 S.Ct. at 2193. Thus, *Simmons* mandates that where future dangerousness is at issue and a specific request is made by the capital defendant, it is a denial of due process to refuse to tell a jury what the term "life sentence" means.

The first issue here is whether *Simmons* applies retroactively to appellant's collaterally attacked case which was final for direct appeal purposes in 1986, eight years before the decision in *Simmons.* A case which breaks with past precedent is not applicable retroactively to cases final on direct appeal but pending in a collateral proceeding. *See, e.g., Allen v. Hardy,* 478 U.S. 255, 257–58, 106 S.Ct. 2878, 2879–80, 92 L.Ed.2d 199 (1986); *Commonwealth v. Gillespie,* 512 Pa. 349, 355, 516 A.2d 1180, 1183 (1986). *Simmons* broke with past precedent in Pennsylvania since such a request would have been properly denied in cases predating the applicability

of *Simmons.*[22] Since *Simmons* announces a new rule of law in Pennsylvania, it is not to be applied retroactively to the collateral attack of appellant's sentences.[23]

�though Further, counsel is not ineffective for failing to predict a change in the law. *Commonwealth v. Triplett,* 476 Pa. 83, 381 A.2d 877 (1977). Appellant's counsel was not ineffective for failing to request a *Simmons* instruction where counsel's actions were predicated on well-established Pennsylvania law or for failing to predict that the law would change eight years after the direct appeal became final. Appellant's final claim is meritless.[24]

The order of the Court of Common Pleas of Cambria County is affirmed.[25]

NIX, C.J., files a concurring opinion which is joined by ZAPPALA, J.

CAPPY, J., concurs in the result.

MONTEMURO, J., is sitting by designation.

**22.** Appellant argues that the *Simmons* Court did not announce a "new rule" but was following established precedent of that Court in its interpretations of the Due Process Clause. However, the *Simmons* rule was a "new rule" for Pennsylvania because Pennsylvania expressly prohibited capital juries from hearing about its life-without-parole statute.

**23.** One cannot ignore the effect of retroactive application of *Simmons* to collaterally attacked sentences. Should we hold otherwise, it is not unreasonable to anticipate that almost every death sentence imposed in Pennsylvania would be subject to collateral attack on the basis of *Simmons.*

**24.** This court has already determined that the evidence was sufficient to sustain the jury's verdict of guilt of one count of murder in the first degree and has conducted a proportionality of sentence review. *See Commonwealth v. Christy,* 511 Pa. 490, 512–513, 515 A.2d 832, 843–44 (1986). Thus, this court has already met the command of *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983) *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983).

**25.** The Prothonotary of the Supreme Court is directed to transmit the complete record in this case back to the Governor, 42 Pa.C.S. § 9711(i).

NIX, Chief Justice, concurring.

I continue to maintain the view that Appellant should have been granted a new sentencing hearing based on the ineffectiveness of trial counsel. Appellant previously asserted on direct appeal to this Court that trial counsel should have objected to portions of the prosecution's cross-examination which implied that Appellant's mental illness was a fabrication and that he was beyond rehabilitation. The prosecution emphasized these points in its closing argument during the penalty phase in which it asked the jury to impose a sentence of death. The majority conceded that trial counsel should have objected, but declined to find counsel ineffective because it concluded that Appellant was not prejudiced by counsel's failure. *Commonwealth v. Christy,* 511 Pa. 490, 504–05, 515 A.2d 832, 839 (1986), *cert. denied,* 481 U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 857 (1987). In my view, such a failure was clearly prejudicial, especially since Appellant's death sentence was supported by the existence of a single aggravating circumstance.[1] The attempt by the prosecution to imply that Appellant's mental illness was contrived might have precluded the jury from finding a mitigating circumstance that would have resulted in a life sentence. However, because a majority of this Court previously decided that Appellant was not prejudiced by trial counsel's failure to object, I am constrained to conclude that this issue was finally litigated, and therefore, Appellant is not entitled to relief under the Post Conviction Relief Act. *See* 42 Pa.C.S. § 9543(a)(3); 42 Pa.C.S. § 9544(a)(2).

ZAPPALA, J., joins this concurring opinion.

---

**1.** This Court declared one of the two aggravating circumstances found by the jury invalid because it was not supported by evidence in the record. *Commonwealth v. Christy,* 511 Pa. at 509, 515 A.2d at 842.